FILED

2006 Oct-27  PM 03:07
U.S. DISTRICT COURT
N.D. OF ALABAMA



## IN THE UNITED STATES DISTRICT COURT
## FOR NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| COMMUNITY BANCSHARES, INC. | ) | |
| EMPLOYEE STOCK OWNERSHIP | ) | |
| PLAN and NORTH STAR TRUST | ) | |
| COMPANY; | ) | |
| | ) | CIVIL ACTION NO.: |
| Plaintiff, | ) | CV-04-BE-0531-S |
| | ) | |
| v. | ) | |
| | ) | |
| KENNON R. PATTERSON, SR. | ) | |
| | ) | |
| Defendant. | ) | |

## **DEFENDANT'S MEMORANDUM IN SUPPORT OF**
## **MOTION FOR SUMMARY JUDGMENT**

Glen M. Connor
Ashley L. McDavid
Whatley Drake & Kallas, LLC
Post Office Box 10647
Birmingham, Alabama 35202-0647
205-328-9576; 205-328-9669 (fax)

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

FACTS ....................................................................................................................2

APPLICABLE LAW ...............................................................................................9

      Summary Judgment Standard...........................................................................9
      Fiduciary Duty .................................................................................................10

ARGUMENT ..........................................................................................................13

      Summary of Argument .....................................................................................13
      Argument .........................................................................................................13

            The conduct which is subject to complaint was not made in a fiduciary capacity.......................................................................................13
            There are not any facts which demonstrate that Patterson violated a duty of disclosure to the ESOP ..........................................................18
            ERISA pre-empts Plaintiffs' state common law claims and all state law claims must be dismissed ...........................................................21

CONCLUSION ........................................................................................................22

CERTIFICATE OF SERVICE .................................................................................23

COMES now Defendant, Kennon R. Patterson, Sr., and submits the following memorandum in support of his Motion for Summary Judgment.

## I.   <u>INTRODUCTION</u>

This case arises out of Ken Patterson's claim for the benefits accrued over a 30-year career at Community Bancshares, Inc.  Patterson was instrumental in the growth of Community Bancshares, and shared in that growth by contributions which were made on his behalf to the Employee Stock Option Plan (ESOP).  He currently owns over 42,000 shares of the company within the ESOP.

The Plan has brought this action.  The Plan is a leveraged ESOP, created for the primary purpose of raising capital for Community Bancshares.  As an ancillary matter, it is designed to enable participants to share in the growth and prosperity of Community Bank and to provide participants with an opportunity to accumulate capital for future income security.

Patterson filed a claim for benefits from the ESOP.  His claim was denied because Community Bancshares alleged that he engaged in breaches of fiduciary duty to the Plan while employed at Community Bancshares.  Summary judgment is appropriate in this case because there is not any evidence that Patterson exercised any discretionary authority or control over the management of the Plan or over the disposition of the Plan's assets during his service with Community.

## II.   <u>FACTS</u>

The undisputed facts relevant to this Motion for Summary Judgment are as follows:

1.     The Defendant, Kennon R. Patterson, Sr. ("Patterson"), served for almost 20 years as President, Chief Executive Officer, and Chairman of the Board of Directors (the "Board") of Community Bancshares, Inc., and was the founding Chairman of Community Bancshares, Inc.  Exh. F, ¶ 2-3.

2.     Patterson started his career with Community Bancshares as President of the Bank of Blountsville in 1983.  Id.  Under Patterson's leadership, the bank grew from one branch and $34 million in assets into a regional bank holding company with over 30 branches and over $750 million in assets.  Exh. F, ¶¶ 2-3.

3.     Patterson served as Chief Executive Officer and Chairman of the Board of Directors of Community Bank, and Chairman of the Board of Directors of Community Bank, both subsidiaries of Community Bancshares, Inc. (Community Bancshares, Inc., and its subsidiaries will be referred to hereinafter collectively as "Community.").    Exh. F, ¶¶ 2-3.  The Bank of Blountsville was acquired by Community Bancshares in addition to other banks, and the company also expanded into Tennessee.  Exh. F, ¶¶ 2-3.

4.     During his employment, Patterson was a participant in the Community Bancshares, Inc., Employee Stock Ownership Plan (the "Plan" or "ESOP").  Exh.

F, ¶ 5.   The Plan is an employee benefit plan as defined by the Employee Retirement Income Security Act, 29 U.S.C. § 1001, et. seq., ("ERISA").  Exh. A, p. 1.

5.     The Employee Stock Ownership Plan was designed to provide "corporate finance to the Company."  Exh. A, p. 1.  In addition, it enabled participating employees to share in the growth and prosperity of Community and to provide participants with an opportunity to accumulate capital for their future economic security.  Id.  The Plan is funded solely by employer contributions and participants are neither required nor permitted to make contributions.  Exh. A, p. 9.

6.     The Community Bancshares Employee Stock Ownership Plan is a leveraged ESOP.  Exh. F, ¶ 7.  The ESOP borrowed money which was used to purchase common stock of Community.  Exh. E, p. 9.  The note was secured by the shares of purchased stock.  Id.  The company guaranteed payment of the loan.  Id.  Community made annual contributions to the ESOP in an amount sufficient to amortize the note.  Id.  Upon payment, a portion of the shares of stock in the ESOP trust were released.  Id.  The released shares of stock were then allocated to the employee's individual accounts.  Id.

7.     The Plan was constructed to invest primarily in Community stock. Exh. A, p. 9.  Contributions to the ESOP were made at the discretion of Community's Board of Directors, but could not be less than the amount required to

cover the debt service on the ESOP loan.  Exh. A, p. 9; Exh. B, pp. 30, 50, 52. During the years Patterson was employed, the contributions were equal to the amount necessary to amortize the note.  Exh. F, ¶ 7.  Employer contributions are allocated to eligible participants in proportion to their compensation.  Exh. A, p. 12.

8.      The ESOP Committee was the named fiduciary of the Plan and was responsible for day-to-day administration and operation of the Plan.  Exh. A, pp. 31-32.  The Board of Directors selects the members of the ESOP Committee.  Exh. B, pp. 2, 12, 38, 55.  The Board of Directors also makes the determination whether to approve any amendments to the ESOP and approves recommendations of the Committee.  Exh. B, pp. 44, 46, 50, 60, 68, 71.

9.      The ESOP Committee functions solely on the approval of the Board of Directors; meets as called by the chairman of the Committee; and makes recommendations to the Board, who, in turn, votes on whether to approve those recommendations.  Exh. B, pp. 74-95.

10.     During his employment with Community, Patterson was a member of the Pension & ESOP Administrative Committee intermittently during 1997, 1998, 1999, and 2002.  Exh. B, pp. 4, 5, 20; Exh. H.

11.     On November 3, 1993, the ESOP Trustees executed a promissory note of $1,200,000.00 in order to purchase shares of Community's common stock.  Exh.

D, p. 12.  The note was secured by 80,000 shares of the purchased stock.  Id.  The promissory note was refinanced subsequent to 1993 as additional shares were purchased by the ESOP.  Id.  On December 1, 1998, the note was refinanced and an additional 56,682 shares of Community stock were purchased by the ESOP.  Id.  The refinanced note, in the original principal of $2,963,842.00, was secured by 261,434 shares of Community common stock.  Id.  The note bore interest at a floating rate, with principal and interest payments due through November 16, 2010.  Id.

12.  On March 26, 1998, a two-for-one stock split occurred.  Exh. B, p. 3.

13.  On November 19, 1998, a shareholder derivative suit was filed against the directors of Community by William Towns (hereinafter referred to as "Towns Derivative Litigation").  Exh. D, p. 16.  The complaint alleged that the directors breached their fiduciary duty to Community and its shareholders, engaged in fraud, fraudulent concealment, suppression of material fact, failed to supervise management, conspired to conceal wrongful acts from Community's shareholders, and paid themselves excessive director fees.  Id.  Additionally, the complaint alleged that the Board of Directors acquiesced in mismanagement and misconduct by Kennon Patterson, including alleged self dealing, payment of excessive compensation, misappropriation of corporate opportunities, and misappropriation of funds.  Id.

14.     In September 1998, Community determined that $9,360,000.00 in motor vehicle loans that were not in compliance with its lending policy.  Exh. E, p. 10.  The bank took appropriate action to protect its interests.  Id.

15.     In June 2000, the company began an investigation of its expenditures regarding construction of a new bank office.  Exh. C, p. 17.  At the July 18, 2000 meeting of the Board of Directors, a director alleged that Community had been overcharged by subcontractors on construction projects.  Id.  A joint committee of independent directors was established to investigate the alleged overcharges.  Id.

16.     On July 21, 2000, a shareholder derivative action was filed in state court relating to the alleged construction overcharges (hereinafter referred to as the "Benson Litigation").  Exh. C, p. 20.  The complaint alleged that the directors breached their fiduciary duties, failed to properly supervise officers and agents, and permitted waste of corporate assets.  Id.  It also alleged that Patterson breached his fiduciary duties by permitting subcontractors to overcharge for work performed in connection with the construction of his residence.  Id.

17.     On August 24, 2000, members of the joint investigative committee were designated as a special litigation committee to investigate and evaluate the allegations and issues raised in this lawsuit and to arrive at such decisions and take such action as it deemed appropriate.  Exh. D, p. 15.  The special litigation committee filed a report of its investigation under seal with the court.  Id.

18.    On September 14, 2000, an action against Community was filed by Bryan Corr and six other related shareholders (hereinafter referred to as "Corr Family Litigation") alleging that the directors actively participated in or ratified the misappropriation of corporate income.  Exh. D, p. 16.

19.    On November 15, 2000, two former directors and executive officers of Community, Michael Alred and Michael Bean, filed suit against Community alleging that they were wrongfully terminated for providing information to bank regulatory and law enforcement authorities concerning violations of laws and regulations, gross mismanagement, and gross waste of funds and abuse of authority (hereinafter referred to as "Employee Litigation").  Exh. D, p. 17.  The complaint alleged that the information provided to authorities concerned certain bank construction projects, specific loans, charge-offs, expenses, and past due accounts. Id.

20.    On January 27, 2003, the Board terminated Patterson from Community and dismissed him from all positions he held within the company. Exh. J.  The stated reasons for his termination included an alleged failure to report his personal bankruptcy to the Board and a release of mortgages on collateral held by Community.  Exh. J, p. 8.

21.   Patterson's counsel notified the Plan on June 16, 2003, and July 7, 2003, and in accordance with the provisions of the Plan, that Patterson was requesting payment of benefits due to him from the Plan.  Exh. I.

22.   On, November 24, 2003, Community Bank informed Patterson that the ESOP Committee denied his request for benefits stating:

> The ESOP Committee has determined that your request for a distribution of your ESOP balance should be denied.  Section 19 of the ESOP provides as follows:
>
>> SECTION 19.  NO ASSIGNMENT OF BENEFITS.  A Participant's Capital Accumulation may not be anticipated, assigned (either at law or in equity), alienated or subject to attachment, garnishment, levy, execution or other legal or equitable process, except in accordance with a 'qualified domestic relations order' (as defined in Section 414(p) of the Code).  To the extent provided under such a qualified domestic relations order, a former spouse of a Participant shall be treated as the spouse or surviving spouse for all purposes under the Plan.  Notwithstanding any provisions of this Section to the contrary, an offset of a Participant's accrued benefit against an amount that the participant is ordered or required to pay the Plan with respect to a judgment, order or decree issued, or a settlement entered into, on or after August 5, 1997, shall be permitted in accordance with Code Section 401(a)(13)(C) and (D).  Emphasis added.
>
> The ESOP Committee has reason to believe that you have breached a fiduciary duty to the ESOP to the detriment of other participants and beneficiaries.  Consequently, the ESOP Committee has decided to seek a judicial determination of whether your ESOP benefits should be used to compensate other participants for this injury.

Exh. G, pp. 1-2.

23.     During the fourth quarter of 2003 and the first quarter of 2004, the Company issued new common stock and sold 3,738,323 shares for total net proceeds from the offering of $18.3 million.  Exh. C, p. 26.

24.     On March 14, 2004, Plaintiffs filed an action in this Court requesting a declaratory judgment, in addition to damages, for Patterson's alleged breaches of duty.  Patterson filed a counterclaim on July 23, 2004 alleging that Community wrongfully denied benefits due him under the ESOP.

25.     Patterson was indicted by a grand jury in this district on October 29, 2003.   The indictment referred to overt acts involved in the conspiracy which occurred late in 1998 and in 2000.   Patterson was ultimately convicted of conspiracy, bank fraud, false bank entries, and false statements on tax returns and sentenced on December 13, 2005.

## III.    **APPLICABLE LAW**

### A.    **Summary Judgment Standard**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Federal Rules of Civil Procedure 56(c). A factual dispute is "genuine" if the evidence is such that a reasonable trier of fact could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986); *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224-25 (11th Cir. 2002).  The movant may also meet his burden by showing that the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23; 106 S.Ct. 2548 (1986); *see also Ebsco Industries, Inc. v. LMN Enterprises*, 89 F.Supp.2d 1248 (N.D. Al. 2000).  When the movant satisfies its initial burden under Rule 56(c), the burden then shifts to the non-movant to "come forward with 'specific facts showing that there is a genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**B.     Fiduciary Duty**

Under ERISA, a person or entity may become a fiduciary either by assumption of fiduciary obligations or by express designation of the ERISA plan documents.  ERISA defines a fiduciary as follows:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan or has any discretionary authority or discretionary responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).

Courts have consistently held that the phrase "to the extent" indicates that a person is a fiduciary only with respect to those aspects of the Plan over which he exercises authority and control; it is not an all or nothing proposition.   The fiduciary obligations can apply to managing, advising, or administering an ERISA plan.  *Pegram v. Hedrich*, 530 U.S. 211, 233, 120 S.Ct. 2143 (2000).  However, a person is a fiduciary only with respect to those aspects of the Plan over which he has or exercises authority and control.  *See, Bannister v. Ullman*, 287 F.3d 394 at 401 (5th Cir. 2002).

There are four primary duties that a fiduciary owes to a plan: A duty of loyalty, a duty of care, a duty to diversify plan assets, and a duty to adhere to plan documents, where prudent.

The duty of loyalty is meant to insure that fiduciaries discharge their duty "solely in the interest of the participants and beneficiaries" and to "exclude all selfish interest and all consideration of the interests of third parties."  29 U.S.C. § 1104(a)(1)(B).  Their duties with respect to the plan must be discharged solely in the interest of participants and beneficiaries.  29 U.S.C. § 1104(a)(1)(A).

Second, a fiduciary must act prudently, "with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use."   29 U.S.C. § 1104(a)(1)(B).  In considering the prudence or not of investment decisions, the test

to be applied is not the test of whether the investment succeeded or failed.  The test of prudence in investments is one of conduct and whether the transaction under scrutiny was properly investigated, evaluated, and structured.  *See, Laborers Nat'l Pension Fund v. Northern Trust Quantitative Advisors, Inc.,* 173 F.3d 313, 317 (5th Cir. 1999).

Next, the fiduciary must diversify the plan's investments to minimize the risk of investment loss.   29 U.S.C. § 1104(a)(1)(C).   Diversification is not evaluated in hindsight.  Plan fiduciaries can make mistakes that do not detract from a conclusion that their decisions were prudent at the time. *Metzler v. Graham,* 112 F.3d 207, 209 (1997).   In the context of an ESOP which invests in qualified employer securities, the diversification requirement may be released or even eliminated.  See, 29 U.S.C. § 1104(a)(1)(B).

Finally, the plan fiduciary must follow the documents and instruments governing the plan. 29 U.S.C. § 1104(a)(1)(D).  A plan fiduciary does not have to follow the documents if to do so would violate the provisions of ERISA.  Plan language constrains a fiduciary's ability to act, but if the action is inconsistent with ERISA, the plan must not be followed.  *Herman v. Nationsbank Trust Co.*, 126 F.3d 1354, 1368 (11th Cir. 1997).

IV.   **ARGUMENT**

A.   **Summary of Argument**

Summary Judgment is appropriate in this case because Patterson is not strictly liable for losses suffered by the ESOP due to the decline in the value of Community stock. ERISA does not provide for strict liability for fiduciaries. Instead, Plaintiffs must prove facts which establish that the alleged fiduciary engaged in misconduct which was directly related to the fiduciary responsibilities of the fiduciary[1]. The plaintiff's case fails because the misconduct which is alleged and the facts which can be proved have nothing to do with ESOP, and moreover, the misconduct alleged was public knowledge at least as early as 1998.  As alleged in this case and on the facts discovered to date, Summary Judgment in favor of Patterson is appropriate.

B.   **Argument**

1.   **The conduct which is subject to complaint was not made in a fiduciary capacity.**

The threshold question in every case charging breach of an ERISA fiduciary duty is whether the person charged with that duty was acting as a fiduciary regarding the action subject to the complaint. Whether the actions of some person

---

[1]Patterson does not concede that he was a fiduciary to the Plan. Construing the facts most favorably to the non-moving party for purposes of this Motion, Patterson served on the ESOP committee and various time and this may have made him a fiduciary as to service on the Committee.

adversely affected a plan is not the question. *See Pegram v. Herdrich,* 530 U.S. 211, 226 (2000); *see also, Cotton v. Mass. Mutual Life Ins. Co.,* 402 F.3d 1267, 1277 (11th Cir. 2005) (holding that "[t]o establish liability for a breach of fiduciary duty under any of the provisions of ERISA § 502(a), a plaintiff must first show that the defendant is in fact a fiduciary with respect to the plan").   Because the facts which are alleged to be wrongful were not taken while Patterson was acting in fiduciary capacity with respect to the ESOP, Patterson did not breach any fiduciary duty he may have owed to the ESOP.

Fiduciary status is a mixed question of law and fact.  Under ERISA, a person or entity may be deemed a fiduciary either by assumption of the fiduciary obligations (the functional or *de facto* method) or by express designation by the ERISA plan documents.  The phrase, "fiduciary with respect to a plan" is defined *de facto* in functional terms of control and authority in § 3(21)(A), 29 U.S.C. § 1002(21)(A):

> A person is a fiduciary with respect to a plan <u>to the extent</u> (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan or has any discretionary authority or discretionary responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.
>
> <u>The phrase "to the extent" indicates that a person is a fiduciary only with respect to those aspects of the plan over which he exercises</u>

<u>authority and control.</u>   Fiduciary status under ERISA is to be construed liberally, consistent with ERISA's policies and objectives, and is defined "in functional terms of control and authority over the plan, … thus expanding the universe of persons subject to fiduciary duties-and to damages-under § 409(a)."   Fiduciary obligations can apply to managing, advising, and administering an ERISA plan. <u>Nevertheless, "a person is a fiduciary only with respect to those aspects of the plan over which he exercises authority or control." Fiduciary status is to be determined by looking at the *actual* authority or power demonstrated, as well as the formal title and duties of the parties at issue.</u>

*In re Enron Corp. Securities Derivative & ERISA Litig.,* 284 F.Supp.2d 511, 543-44, (S. D. Texas, 2003) (emphasis supplied).

An ERISA trustee may wear many hats, and may have financial interests that are adverse to the interests of the beneficiaries. *In re Enron Corp.,* 284 F.Supp.2d at 550, *quoting Pegram,* 530 U.S. at 225.  Thus, he or she is a fiduciary only "to the extent that he acts in such a capacity in relation to a plan."  <u>*Id.*</u>  The question to be determined then is whether a fiduciary was performing a fiduciary function when he performed the action that constitutes the basis of the complaint. <u>*Id.*</u>

Counts One through Three of Plaintiffs' Complaint, while couched in slightly different terms, allege two breaches of duty.  The first breach of duty may be referred to as "affirmative acts."[2]  The affirmative acts which are complained of, and which discovery revealed, include acts that eventually led to Patterson's

---

[2]The second breach, relating to disclosure and misrepresentation, is addressed in Section 2 below.

conviction for bank fraud.[3]   Patterson does not dispute that he was convicted of bank fraud.  Nor, for purposes of this Summary Judgment Motion, does Patterson dispute that there was mismanagement, bad business decisions, nepotism, and poor business choices that occurred during his tenure.  In fact, as early as 1998, these allegations were public knowledge and had resulted in various lawsuits against the bank.  Exh. D, p. 16.   There is not any evidence, however, that any of this misconduct involved the ESOP in any way.  There is not a spark, glimmer, or gleam of evidence that the litany of misconduct alleged against Mr. Patterson related to the management or administration of the Plan.  In fact, Patterson did not exercise any discretionary authority regarding the Plan.  He followed the mandates of the Plan.  He did not render investment advice to the Plan.  Other than assisting in benefit determinations while a member of the Administrative Committee, he did not take any action that consisted of discretionary authority or control over Plan assets.  Exh. F, ¶¶ 7-8.  Indeed, the power of the Committee on which he sat was limited to making recommendations to the Board of Directors.  Exh. B, pp. 4-5, 29, 42.

The Eleventh Circuit addressed similar claims in *Local Union 2134, United Mine Workers of America v. Powhatan Fuel, Inc.*, 828 F.2d 710, 712-13 (11th Cir. 1987).   In *Powhatan*, the president of a small, closely held corporation was

---

[3]That conviction is currently pending appeal in the Eleventh Circuit.

accused of breaching fiduciary responsibilities, primarily for using funds that were available to the corporation to pay business expenses of the corporation rather than insurance premiums.  As a result of the failure to pay the insurance premiums, the employees of the corporation were deprived of insurance benefits and incurred extensive medical costs.  Judge Guin held that the president of the corporation was a fiduciary and breached his fiduciary responsibility by failing to make the insurance premium payments.  The Eleventh Circuit reversed.  The court noted that ERISA recognizes that a person is a fiduciary for some purposes and not others. The key is in the statutory definition, which provides that an individual is a fiduciary of the Plan only "to the extent" he or she exercises control or authority over the Plan.   One assumes a fiduciary status only when and to the extent they function as fiduciaries, "not when they conduct business that is not regulated by ERISA."  Because the actions of the corporate president did not relate to the Plan, there was no ERISA liability.  *Powhatan,* 828 F.2d at 714.  The same is true here. There is not any evidence that Patterson's actions, whatever they may have been, related to the administration of the Plan, the management of the Plan, or the disposition of the assets of the Plan.

Accordingly, Counts One through Four of the Plaintiff's Complaint should be dismissed.

### 2.   There are not any facts which demonstrate that Patterson violated a duty of disclosure to the ESOP.

There are not any facts upon which the Plaintiffs can maintain a cause of action for breach of duty to disclose any relevant information relating to the management of the corporation. In the first place, allegations regarding the problems of management at the Bank were public at least as early as 1998. Exh. D, p. 16. The Board of Directors was informed of these allegations, as were the other members of the ESOP committee. Subsequent litigation ensued in 2000. Indeed, the bank was involved in multiple litigation and regulatory investigations throughout this period, a fact well known to the Board of Directors. Exh. C, pp. 17-20; Exh. D, pp. 15-17. In fact, a special committee for investigation of the allegations was formed by the bank and undertook an investigation of the allegations. Exh. D, p. 15. In short, the alleged shortcomings of Patterson's management were known and were public knowledge. Even if a duty of disclosure existed, it was not violated by Patterson. *See, Smith v. Delta Airlines,* 422 F.Supp.2d 1310, 1333 (N.D. Ga. 2006) (plaintiffs cannot base failure to disclose claim on whether facts were publicized).

More importantly, ERISA fiduciaries do not have a general duty of disclosure. ERISA is a comprehensive reticulated statute that contains multiple provisions relating to specific disclosures that are required to be made by plan administrators. See, 29 U.S.C. § 1021, *et seq.* Nothing in ERISA requires

employers, plan sponsors, or fiduciaries to provide participants with reports of a company's financial performance nor does it contain any provision that the plan or plan participants be provided any material, non-public information regarding the company. The question of what disclosure is appropriate regarding a corporation's business prospects or the financial condition of a business is a business decision, not a plan specific matter. *See, Phillips v. Amoco*, 799 F.2d 1464 (11th Cir. 1986). Accordingly, Courts have consistently recognized that ERISA does not impose a duty upon plan fiduciaries to disclose general information about business activity or the financial health of the employer to plan participants. *See, e.g., Vartanian v. Monsanto Corp.,* 888 F. Supp. 63, 69 (D. Mass. 1995) ("a claim for breach of fiduciary duty under ERISA cannot be anchored on a employer's misleading statement regarding its business plans") aff'd, 131 F.3d 264 (1st Cir. 1997); *see, Varity v. Howe*, 516 U.S. 489, 505 (1996) (an employer does not act as an ERISA fiduciary "simply because it makes statements about its expected financial condition or because an ordinary business decision turns out to have an adverse impact on the Plan;" fiduciary liability only arises when misrepresentations specifically concern "the security of benefits . . . [amounting to] an act of plan administration") (citations omitted). Thus, ERISA's fiduciary standards may not be used to imply a duty to disclose information that ERISA's detailed disclosure provisions do not require to be disclosed. *Sprague v. General Motors Corp.,* 133

F.3d 388, 405 (6th Cir. 1998) (*en banc*). Indeed, no court of appeals has ever recognized an ERISA duty to make disclosure beyond ERISA's detailed disclosure requirements.  See, *Pedraza v. Coca Cola Company,* ____ F.Supp.2d ____, 2006 WL 2934989 (M.D. Ga., Sept. 29, 2006) (collecting cases).

Because there is not any evidence that Patterson violated the specific disclosure requirements, the disclosure claims fail as a matter of law.  *Sprague v. General Motors Corp.,* 133 F.3d 388, 405, n.15 (6th Cir. 1998) ("when Congress and the Department of Labor have carefully prescribed a detailed list of matters that must be disclosed to plan participants and beneficiaries, it ill behooves federal judges to add to that list"); *see also Sweeney v. Kroger Co.,* 773 F. Supp. 1266, 1268 (E.D. Mo. 1991) (dismissing claim that plan fiduciaries permitted plan participants to sell company stock in their plan account "for an amount known [to those fiduciaries] to be inadequate," breached any duty of disclosure under ERISA).

In addition, to the extent that any of the information Plaintiffs claim should have been disclosed would have been useful to an investor but was not already in the public domain, that information was, by definition, material non-public information and the Defendant could not have selectively disclosed it to the Plan without violating federal securities laws.  *See, e.g.,* Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78(j); and Rules 10(b)-5, 10(b)(5)-1, and

10(b)(5)-2 promulgated thereunder, 17 C.F.R. §§ 240.10b-5, 240.10510b5-1, and 240.10b5-2, (prohibiting use of material, non-public information in connection with the purchase or sale of securities).  Nothing in ERISA exempts the plan that acquires such information from complying with these laws, to the contrary, ERISA provides that it specifically does not alter, amend, invalidate, impair, or supersede any other law of the United States.  ERISA § 514(d).

### 3.   ERISA pre-empts Plaintiffs' state common law claims and all state law claims must be dismissed.

This action is purportedly brought pursuant to the provisions of "Alabama common law" and ERISA.  (*See, e.g.* Complaint, paragraphs 17, 21).  ERISA pre-empts all laws, decisions, rules, regulations, or judicial decisions that have the effect of law of any state.  29 U.S.C. § 1144(c)(1).  Because the causes of action asserted by the Plaintiffs clearly and unequivocally relate to an employee benefit plan, any action pursuant to Alabama common law is pre-empted.  *Phillips v. Amoco Oil Co.,* 799 F.2d 1464 at 1469 (11th Cir. 1986).  Indeed, it is now well settled that breach of fiduciary duty claims, including claims for breach of fiduciary duty brought by participants or brought on behalf of a plan, are pre-empted by the provisions of ERISA.  *See, e.g., Dudley Supermarket, Inc. v. Transamerica Life Ins.*, 302 F.3d 1 (1st Cir. 2002) (tort claims pre-empted as breach of fiduciary duty to provide competent investment advice); *Smith v. Provident Bank*, 170 F.3d 609 (6th Cir. 1999) (fiduciary breach claim pre-empted);

*Kramer v. Smith Barney*, 80 F.3d 1080 (5th Cir. 1996); *District 65 v. Prudential Secs.*, 925 F. Supp. 1551 (N.D. Ga. 1996); *Phillips v. Amoco Oil Co.,* 799 F.2d 1464 (11th Cir. 1986) (claim of fraudulent failure to disclose effects of sale on retirement benefits pre-empted by ERISA).

Because all of the actions alleged by the Plaintiffs in this case relate to his duties and responsibilities to the Plan, any state law claim is pre-empted.

## V.   CONCLUSION

For the reasons given above, Defendant's Motion for Summary Judgment is due to be granted.

s/Ashley L. McDavid
Attorney for Defendant

OF COUNSEL:
Glen M. Connor
Whatley Drake & Kallas, LLC
Post Office Box 10647
Birmingham, Alabama 35202-0647
205-328-9576; 205-328-9669 (fax)

AM1653.DOC

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 27, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Randall D. Quarles
WALLER LANSDEN DORTCH & DAVIS, LLP
1901 Sixth Avenue North, Suite 1400
Birmingham, AL  35203-2623

John C. Morrow
Burr & Forman
420 North 20th Street, Suite 3100
Birmingham, Alabama 35203

Michael T Graham
McDermott Will & Emery
227 West Monroe Street, 31st Floor
Chicago, Illinois 60606-5096

s/Ashley L. McDavid
Of Counsel
