## IN THE UNITED STATES DISTRICT COURT
## FOR NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

COMMUNITY BANCSHARES, INC.,)
EMPLOYEE STOCK OWNERSHIP  )
PLAN, by and through the Pension   )
and ESOP Administrative Committee )
of the Community Bancshares, Inc.,  )     CIVIL ACTION NO.
Board of Directors; and NORTH   )
STAR TRUST COMPANY, as    )     CV-04-BE-0531-S
Trustee of the Community    )
Bancshares, Inc., Employee Stock   )
Ownership Plan Trust,    )
                )
      Plaintiffs,    )
                )
v.    )
                )
KENNON R. PATTERSON, SR.,   )
                )
      Defendant.    )

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF
## COMMUNITY ESOP'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff Community Bancshares, Inc., Employee Stock Ownership Plan (the

"Community ESOP") is entitled to a partial summary judgment establishing the liability

of defendant Kennon R. Patterson, Sr. ("Patterson"). Collateral estoppel precludes Pat-

terson from denying in this action his guilt of various acts of fraud that siphoned almost

$1.8 million from Community Bancshares, Inc. ("Bancshares"), through its subsidiary,

Community Bank (the "Bank"). He already has been tried and convicted in this District

of those offenses. Abundant law establishes that Patterson owed fiduciary duties to the

Community ESOP as a Bancshares director and officer and also as a member of the Community ESOP's administrative committee (the "ESOP Committee"). Those duties included a duty to disclose his knowledge of his own wrongdoing and the effect that it would have on Bancshares stock, which is the sole investment of the Community ESOP for the plan's participants. He also had a duty to make sure that ESOP Committee members did make an imprudent investment in Bancshares stock. Patterson has admitted that he made no such disclosures and communicated no such warnings to the Community ESOP or the ESOP Committee. Therefore, he is liable for the resulting loss in the value of the Community ESOP's investment. The amount of that loss is significant and will be established in further proceedings.

## BACKGROUND

Community ESOP's motion for partial summary judgment (the "Motion") states the pertinent facts. Those facts are incorporated here but will not be repeated in full. Basically, Patterson stole from and otherwise mismanaged Bancshares and the Bank while he was their chairman and chief executive officer. The Community ESOP invested in Bancshares stock as a retirement plan for employees of Bancshares and its subsidiaries. Patterson's wrongdoing resulted in a sharp decline in the fair market value of that stock, which fell from a high of $25 in 2000 to a range of $8 to $10 this year.

## STANDARD FOR DETERMINING THE MOTION

Summary judgment under Rule 56 is appropriate where the pleadings and evidence in the record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c) All evidence and factual inferences are to be viewed in the light most favorable to the non-moving party, but "[o]nly factual disputes that are material under the substantive law governing the case will preclude the entry of summary judgment." *Lofton v. Secretary, Dept. of Children & Family Servs.*, No. 01-16723, 2004 WL 161275 (11th Cir. Jan. 28, 2004); *Kelly v. A.L. Williams Corp.*, 669 F. Supp. 1058, 1067-68 (N.D. Ala. 1986) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548 (1986).

## ARGUMENT

The evidentiary record and pertinent case law support the Community ESOP's claims against Patterson. ERISA § 502(a)(2)-(3) authorizes actions by fiduciaries for damages or equitable relief. 29 U.S.C. § 1132(a)(2). The ESOP Committee is a fiduciary of the Community ESOP. *See* Plan Document at p. 31, § 20 (Evid. Sub. tab 8). Courts have recognized ERISA claims alleging that a plan fiduciary engaged in misconduct that harmed a plan or failed to disclose material information about the plan's investments. *See, e.g.*, *Woods v. Southern Co.*, 396 F. Supp. 2d 1351, 1365-74 (N.D. Ga. 2005); *In re Enron Corp. Securities, Derivative & "ERISA" Litigation*, 284 F. Supp. 2d 511 (S.D. Tex. 2003). This law applies squarely to Patterson's misconduct and his fail-

ure to disclose material information that the Community ESOP required to safeguard its investments for its participants.

## I.  PATTERSON WAS A FIDUCIARY OF THE COMMUNITY ESOP.

ERISA imposes broad obligations on fiduciaries for the protection of participants and beneficiaries.  ERISA §§ 404(a)(1)(A) and (B) provide, in pertinent part:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participant and beneficiaries and:
>
> (A) for the exclusive purpose of:
>
> (i) providing benefits to participants and their beneficiaries; and
>
> (ii) defraying reasonable expenses of administering the plan;
>
> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

29 U.S.C. § 1104(a)(1)(A)-(B).

These fiduciary obligations, known as the "duty of loyalty" and the "duty of care," are among the "highest known to law."  *Herman v. NationsBank Trust Co.*, 126 F.3d 1354, 1361 (11th Cir. 1997) (quoting *Donovan v. Bierwirth*, 680 F.2d 263, 272 n. 8 (2d Cir. 1982)); *see also Bussian v. RJR Nabisco*, 223 F.3d 286,  294 (5th Cir. 2000) (same). The duty of loyalty requires fiduciaries to act with "complete and undivided loyalty to the beneficiaries of the trust" and with an "eye single to the interests of the participants

and beneficiaries." *See, e.g.*, *Leigh v. Engle*, 727 F.2d 113, 123 (7th Cir. 1984) (citations omitted). ERISA's "duty of care" requires each fiduciary to act with the "care, skill, prudence, and diligence under the circumstances then prevailing, that a prudent man acting in a like capacity and familiar with such matters" would employ. 29 U.S.C. § 1104(a)(1)(B). The duties originate in the common law of trusts, to which Congress specifically looked when legislating ERISA's fiduciary duties. *Central States, Southeast & Southwest Areas Pension Fund v. Central Transp., Inc.*, 472 U.S. 559, 570 & n. 10 (1985), *citing* S. Rep. No. 93-127, p. 29 (1973), 1974 U.S.C.C.A.N. (88 Stat. 832) 4639, 4865 ("The fiduciary responsibility section, in essence, codifies and makes applicable to these fiduciaries certain principles developed in the evolution of the law of trusts.") and H.R. Rep., No. 93-533, P. 11 (1973), 1974 U.S.C.C.A.N. (88 St. 832) 4649 (identical language).

A person is a fiduciary under ERISA "to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." ERISA § 3(21)(A)(i)-(ii). The Eleventh Circuit has observed that "[t]he term 'fiduciary' has a broader meaning under ERISA than at common law because ER-ISA 'defines "fiduciary" not in terms of formal trusteeship, but in functional terms of

control and authority over the plan.'" *Hunt v. Hawthorne Assocs., Inc.*, 119 F.3d 888, 892 n. 2 (11th Cir. 1997) (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993)). In other words, fiduciary status is defined not only by reference to particular titles, but also by the authority which a particular person has or exercises over an employee benefit plan. *Bannistor v. Ullman*, 287 F.3d 394, 401 (5th Cir. 2002).

Patterson has admitted that he owed fiduciary duties to the Community ESOP. Patterson Depo. at 58-60. The facts establish his fiduciary status in any event. Section 20 of the Plan Document provided that the ESOP Committee had the responsibility for managing the Community ESOP. Thus, while a member of the ESOP Committee, Patterson was directly charged with managing and protecting the Community ESOP's assets, and he was a named fiduciary. There is no sensible argument that could absolve him of liability for his acts and omissions as a fiduciary who, rather than managing and protecting the Community ESOP's assets, gravely damaged them.

Similarly, as an officer and director of Bancshares, Patterson was influential in the exercise of the Board's power to appoint, retain and remove plan fiduciaries. *See* ESOP Plan § 20; Lewis Depo. at 31-31 (Evid. Sub. tab 2); Lewis Aff. ¶ 2 (Evid. Sub. tab 5). As a person with such power and influence, Patterson had "discretionary authority" over the management or administration of a plan under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), and was thus a fiduciary of the Community ESOP in that role as well. *See*

*Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1465-66 (4th Cir. 1996); *Leigh v. Engle*, 727 F.2d 113, 134-35 (7th Cir. 1984). Thus, at all pertinent times while he was engaging in his surreptitious fraud against Bancshares, Patterson owed a fiduciary duty to the Community ESOP.

## II. PATTERSON'S FIDUCIARY DUTIES INCLUDED DUTIES OF DISCLOSURE, OVERSIGHT AND MONITORING.

ERISA contains several provisions pertaining to the disclosure of certain types of information. The case law makes it clear, however, that ERISA's express disclosure provisions are *in addition to* the general duty of candor that applies to *all* fiduciaries in circumstances where disclosure is essential to protect the interests of beneficiaries. ERISA does not supplant the law of trusts, but supplements it:

> Although the statute articulates a number of fiduciary duties, it is not exhaustive. Rather, Congress relied upon the common law of trusts to "define the general scope of [trustees and other fiduciaries'] authority and responsibility." *Central States Pension* Fund, 472 U.S. at 570, 105 S.Ct. at 2840. *Accord Eddy v. Colonial Life Ins. Co.*, 919 F.2d 747, 750 (D.C. Cir. 1990). Justice Brennan explained that "Congress intended by [ERISA] § 404(a) to incorporate the fiduciary standards of trust law into ERISA, and it is black-letter trust law that fiduciaries owe strict duties running directly to beneficiaries in the administration and payment of trust benefits." *Massachusetts Mutual*, 473 U.S. at 152-53, 105 S.Ct. at 3095-96 (footnote omitted). . . .
>
> . . . .
>
> [The] duty to inform is a constant thread in the relationship between beneficiary and trustee; it entails not only a negative duty not to misinform, but also an affirmative duty to inform when the trustee knows that silence

might be harmful. . . .

*Bixler v. Central Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1299-1300 (3d Cir. 1993).

The Supreme Court and other courts have rejected the contention that ERISA fiduciaries are bound by only the statute's specific disclosure provisions and the plan instruments. If fiduciaries' responsibilities were defined solely by statute or contract, the term "fiduciary" in the ERISA context would be hollow indeed. As the Supreme Court concluded in *Varity v. Howe*, "the primary function of the fiduciary duty is to constrain the exercise of *discretionary* powers which are controlled by no other specific duty imposed by the trust instrument or the legal regime." 516 U.S. at 504 (emphasis added). *See also Jordan v. Federal Express Corp.*, 116 F.3d 1005, 1012 (3d Cir. 1997) (citing *Varity* and noting that "[i]t would appear that the Supreme Court has also determined that fiduciary duties operate both independently from and in conjunction with ERISA's specifically delineated requirements."). Under *Varity*, therefore, Patterson cannot claim that he had no duties to disclose information beyond that which strictly complied with the statutory disclosure requirements.

### A. A Fiduciary Such as Patterson Must Ensure That Plan Participants Are Accurately and Adequately Informed.

A fiduciary's duty of loyalty to plan participants under ERISA includes an obligation not to mislead plan participants and beneficiaries. *See, e.g.*, *Berlin v. Michigan Bell*

*Telephone Co.*, 858 F.2d 1154, 1163 (6ᵗʰ Cir. 1988); *Fischer v. Philadelphia Elec. Co.*, 994 F.2d 130, 135 (3d Cir.), *cert. denied*, 510 U.S. 1020 (1993). This duty includes a prohibition on lying. *Varity v. Howe*, 516 U.S. 489, 506 (1996) ("[L]ying is inconsistent with the duty of loyalty owed by all fiduciaries and codified in section 404(a)(1) of ER-ISA." (Citations omitted)). Fiduciaries also can violate their duty of loyalty by misleading participants and beneficiaries though other actions, inaction or silence. *See, e.g.*, *Becker v. Eastman Kodak Co.*, 120 F.3d 5, 9 (2d Cir. 1997) (stating that, because a summary plan description and a benefits counselor's advice together amounted to materially misleading information, a fiduciary breached its duty to provide participants with complete and accurate information); *Simeon v. Mount Sinai Med. Ctr.*, 150 F. Supp. 2d 598, 604 (S.D.N.Y. 2001); *In re Bidermann Indus. U.S.A., Inc.*, 241 B.R. 76, 90 (Bankr S.D.N.Y. 1999).

ERISA fiduciaries are charged with more than a duty to refrain from affirmatively misleading plan participants, or to correct their own misstatements. They also have a duty to protect plan participants from misleading information. Accordingly, when a fiduciary is aware that participants have been misinformed about the very stability of their retirement assets, he or she must take action to protect the participants. Although he wrote before enactment of ERISA, Justice Cardozo's phrasing of a fiduciary's duty to speak also applies under the federal statutory scheme: "A beneficiary, about to plunge

into a ruinous course of dealing, may be betrayed by silence as well as by the spoken word." *Globe Woolen Co. v. Utica Gas & Elec. Co.*, 224 N.Y. 483, 489 (N.Y. 1918). Thus, while a fiduciary is "free to stand aloof, while others act, if all is equitable and fair," he or she must disclose the truth or take other prudent action to protect plan assets "if there is improvidence or oppression, either apparent on the surface, or lurking beneath the surface, but visible to his practiced eye." 244 N.Y. at 489.

In some circumstances, the duty of loyalty may require the fiduciary to correct inaccurate or misleading information so that the participants and beneficiaries will not be injured as a result of it. *See Franklin v. First Union Corp.*, 84 F. Supp. 2d 720, 735 (E.D. Va. 2000) (holding that a fiduciary had "a duty to notify the plaintiffs of the changes in the investment funds in such a manner as to prevent any misinformation to and misleading of the plaintiffs regarding their options."); *Griggs v. E.I. DuPont de Nemours & Co.*, 237 F.3d 371, 381 (4th Cir. 2001) (stating that an "ERISA fiduciary that knows or should know that a beneficiary labors under a material misunderstanding of plan benefits that will inure to his detriment cannot remain silent--especially when that misunderstanding was fostered by the fiduciary's own material representations or omissions").

Other courts also have held that, where plan assets are seriously at risk, it is the core of a fiduciary's responsibility to disclose complete and correct material information.

*Watson v. Deaconess Waltham Hosp.*, 298 F.3d 102 (1st Cir. 2002) (holding that a fiduciary had an obligation to accurately convey material information to beneficiaries, including material information that the beneficiary did not specifically request, if there was some particular reason that the fiduciary should have known that his failure to convey the information would be harmful); *Bixler v. Central Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1300 (3d Cir. 1993); *Griggs v. E.I. DuPont de Nemours & Co.*, 237 F.3d 371, 380 (4th Cir. 2001); *Krohn v. Huron Memorial Hosp.*, 173 F.3d 542, 548 (6th Cir. 1999); *Anweiler v. American Elec. Power Serv. Corp.*, 3 F.3d 986, 991 (7th Cir. 1993); *Howe v. Varity Corp.*, 36 F.3d 746, 754 (8th Cir.), *aff'd*, 516 U.S. 489 (1996); *Barker v. American Mobil Power Corp.*, 64 F.3d 1397, 1403 (9th Cir. 1995). A fiduciary must take steps to see that participants receive material information "when the trustee knows that silence might be harmful." *Bixler*, 12 F.3d at 1300. As the United States Circuit Court of Appeals for the District of Columbia has stated:

> The duty to disclose material information is the core of a fiduciary's responsibility, animating the common law of trusts long before the enactment of ERISA. . . .
>
>          . . . . A fiduciary has a duty not only to inform a beneficiary of new and relevant information as it arises, but also to advise him of circumstances that threaten interests relevant to the [fiduciary] relationship. For example, ***a fiduciary bears an affirmative duty to inform a beneficiary of the fiduciary's knowledge of prejudicial acts by an employer . . . .***

*Eddy v. Colonial Life Ins. Co. of Am.*, 919 F.2d 747, 750-51 (D.C. Cir. 1990) (emphasis

added).[1]

No participant request for information is necessary to trigger the fiduciary's duty to disclose information that threatens a benefit plan's financial health. As the Third Circuit has noted, it would be self-defeating to hold that the absence of a specific request for information somehow alleviates a fiduciary's obligation to disclose information that is needed for prudent investment decisions:

> Such a result would not only hoist the beneficiary by its own petard, it is contrary to well established principles governing the relationship between a fiduciary and beneficiary….
>
> . . . . Indeed, absent such information, the beneficiary may have no reason to suspect that it should make inquiry into what may appear to be a routine matter. If [a party] was a fiduciary, the Funds' failure to request information concerning [the issue that threatened plan assets] has no bearing on whether [the fiduciary] breached the duties it owed the Funds by not volunteering the information.

*Glaziers & Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Sec., Inc.*, 93 F.3d 1171, 1181 (3d Cir. 1996).

The district court in *Enron* recognized this duty of disclosure when it denied a motion to dismiss fiduciary claims alleging that Lay and others "failed to provide material information or correct misleading information essential to prudent administration of the plans." *Enron*, 284 F. Supp. 2d at 659. The United States District Court in New Jersey

---

[1] The fiduciary duty of disclosure under ERISA is in accordance with the common law of trusts: a trustee "is under a duty to communicate to the beneficiary material facts affecting the interest of the beneficiary which he knows the beneficiary does not know and which the beneficiary needs to know for his

reached the same result in denying a motion for summary judgment on fiduciary-disclosure claims. In two published opinions in *Canale v. Yegen*, 782 F. Supp. 963 (D.N.J. 1992) and 789 F. Supp. 147 (D.N.J. 1992) (on reconsideration), the court addressed claims alleging various breaches of fiduciary duty involving an employee stock ownership plan. The Court determined that mere business decisions by corporate officers who were also plan administrators were not actionable under ERISA. Nevertheless, the plaintiff's allegations ***did*** state an actionable claim against those officers who "were not only aware of the deteriorating condition [of the plan's primary asset], but fraudulently concealed that condition by falsifying financial statements and engineering spurious and unlawful transfers among companies controlled by defendants." *Canale*, 782 F. Supp. at 968. In its second opinion, the court provided this additional explanation:

> Although ESOP plan administrators who are also company officers or directors have no fiduciary duty to plan beneficiaries for actions taken in their capacity as company employees, it is the view of the court that an employee/ESOP fiduciary's *knowledge* that she committed a fraudulent act in her capacity as an employee may be ascribed to her in her capacity as ESOP trustee. Failure to act prudently on the basis of that knowledge would then violate her fiduciary duties in her capacity as plan administrator.

789 F. Supp. at 154 n. 5 (emphasis by court).

Patterson certainly had the same duty as the defendants in *Enron* and *Canale* to disclose material information rather than remaining silent as the Community ESOP was

---

protection in dealing with a third person." *Restatement (Second) of Trusts* § 173, cmt. d (1959).

damaged. He violated his fiduciary duty of loyalty by, among other things, failing to disclose his malfeasance, the deterioration of Bancshares assets, and regulatory issues. He knew that the Community ESOP relied primarily on Bancshares stock in its investments, yet he knowingly allowed the ESOP Committee to make investment decisions without the benefit of all pertinent information about the financial condition of the corporation.

**B.     Patterson Also Had a Duty to Monitor ESOP Committee Members and Avoid Conflicts of Interest That Would Harm the Plan.**

Patterson's duty of oversight and monitoring as a director of Bancshares included the duty to ensure that the appointees on the ESOP Committee had accurate information about the corporation's financial condition. *Woods v. Southern Co.*, 396 F. Supp. 2d 1351, 1373 (N.d. Ga. 2005) ("[T]he duty to keep appointees informed has gained reasonably wide acceptance as an inherent facet of the more general 'duty to monitor.'"). The need for this information was made all the more acute by Patterson's own misconduct in deceiving the corporation and the investing public, including the Community ESOP itself. *Cf. Glaziers & Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Sec., Inc.*, 93 F.3d 1171, 1181-82 (3d Cir. 1996) (holding that if a securities firm was a fiduciary it had an obligation to disclose to the benefit plans that the firm's former employee had resigned because of investment improprieties before the plans hired the former employee).

As the Eleventh Circuit has declared, corporate officers or agents who have fiduciary responsibility for employee benefit plans must also be especially careful to **avoid** conflicts of interest that could harm plan participants. *Deak v. Masters, Mates & Pilots Pension Plan*, 821 F.2d 572, 580-81 (11th Cir. 1987), *cert. denied*, 484 U.S. 1005 (1988). In *Deak* the Eleventh Circuit held that "the statutorily imposed fiduciary duty to act solely in the interest of the participants and beneficiaries under ERISA requires trustees who are also officers or agents of a corporation or a union to act with caution in areas of potential conflicts of interest." 831 F.2d at 580. This obligation "'imposes the duty on the Trustees to avoid placing themselves in a position where their acts as officers or directors of their corporation will prevent their functioning with the complete loyalty to participants demanded of them as Trustees of a pension plan.'" 831 F.2d at 580-81 (quoting *Donovan v. Bierwirth*, 680 F.2d 263, 271 (2d Cir.), *cert. denied*, 459 U.S. 1069 (1982)).

## III. PATTERSON'S CONVICTION COLLATERALLY ESTOPS HIM FROM DENYING HIS CRIMINAL CONDUCT.

No fact issue remains for the Court to decide about the criminal acts by which Patterson caused Bancshares approximately $1.8 million in damages, if not more. A jury in this District conclusively established his guilt at his criminal trial. *See* Patterson Depo. Pl. Exh. 2 (Evid. Sub. tab 1).

The United States Court of Appeals for the Eleventh Circuit follows the rule that final judgments of a court of competent jurisdiction have a collateral estoppel effect in subsequent actions where four conditions are met: "1) the issue is identical in both the prior and current action; 2) the issue was actually litigated; 3) the determination of the issue was critical and necessary to the judgment in the prior action; and 4) the burden of persuasion in the subsequent action is not significantly heavier." *Securities and Exchange Commission v. Bilzerian (In re Bilzerian)*, 153 F.3d 1278, 1281 (11th Cir. 1998). The rule applies to either criminal or civil judgments.

In *Bilzerian*, a debtor in bankruptcy ("Bilzerian") had been convicted in federal court on nine counts of securities fraud. The federal Securities and Exchange Commission (the "SEC") sued to force Bilzerian to disgorge his fraudulently obtained profits. The district court in the civil action found that the criminal conviction collaterally estopped Bilzerian from challenging the civil action, and it ordered him to disgorge about $33 million plus interest. In Bilzerian's separate bankruptcy proceeding, the SEC sought to except the $33 million award from a bankruptcy discharge on the ground that it was a debt for money obtained by fraud. Affirming a district court decision, the Eleventh Circuit held that the criminal conviction collaterally estopped Bilzerian from challenging the SEC's claim of fraud in the bankruptcy action. 153 F.3d at 1282-83.

Abundant precedents from other federal circuits also have declared the preclusive effect of criminal convictions in subsequent civil proceedings. For example, in *Smith v. SEC*, 129 F.3d 356 (6th Cir. 1997) (en banc), the United States Court of Appeals for the Sixth Circuit vacated a district court's declaratory and injunctive relief for a securities trader who sought to block the SEC from using allegedly improper wire-tapping evidence against him in a civil action. The court of appeals vacated the injunctions after it found that the trader's criminal conviction for insider trading based on the wire-tapping evidence was entitled to collateral estoppel effect, and thus had mooted the issues about the evidence he challenged. 129 F.3d at 362.

Patterson's conviction collaterally estops him in this action notwithstanding his pending appeal in the criminal case. In the Eleventh Circuit, the pendency of an appeal does not divest a final judgment of its collateral estoppel effect. In *Fidelity Standard Life Ins. Co. v. First Nat'l Bank & Trust Co. of Vidalia, Georgia*, 510 F.2d 272, 273 (5th Cir.), *cert. denied* 423 U.S. 864 (1975), the former Fifth Circuit Court of Appeals stated that "[a] case pending appeal is res judicata and entitled to full faith and credit unless and until reversed on appeal."

The same rule is recognized throughout the federal judicial system. The Supreme Court of the United States long has noted that "a judgment, not set aside on appeal or otherwise, is equally effective as an estoppel upon the points decided, whether the deci-

sion be right or wrong." *Reed v. Allen*, 286 U.S. 191 (1932). Other federal circuits agree that a judgment is entitled to collateral estoppel effect despite the pendency of an appeal. The court in *Smith v. SEC*, 129 F.3d 356 (6th Cir. 1997), explicitly noted that "[t]he fact that Smith has an appeal of that judgment [of conviction] pending does not deprive the judgment of res judicata effect." 129 F.3d 356, 362 n. 7. The Seventh Circuit has stated the issue in this manner: "[T]he general rule in American jurisprudence [is] that a final judgment of a court of first instance can be given collateral estoppel effect even while an appeal is pending." *Prymer v. Ogden*, 29 F.3d 1208, 1213 n.2 (7th Cir. 1994). Federal courts thus routinely hold that a conviction precludes the defendant from relitigating his guilt in a civil action, notwithstanding a pending appeal from the conviction.

The case at bar satisfies the requirements for collateral estoppel. First, the issues in the criminal case pertaining to Patterson's underlying wrongdoing are identical with those here. Second, the fact of Patterson's commission of his crimes was actually litigated in the criminal trial. Third, the determination of Patterson's commission of the same criminal conduct at issue in this civil action was critical and necessary to the jury's guilty verdict against Patterson. Finally, the burden of persuasion in this case is lower than it was in the criminal trial, where the burden was "beyond a reasonable doubt." Accordingly, the facts of Patterson's criminal conduct have been established conclusively for present purposes. *Bilzerian*, 153 F.3d at 1281.

## IV. PATTERSON BREACHED HIS FIDUCIARY DUTY TO THE COMMUNITY ESOP.

As Patterson admitted in his deposition, he never disclosed his misdeeds to the Community ESOP or anyone else. Patterson Depo. at 465-66; Lewis Depo. at 51; Lewis Aff. ¶ 3. Thus, he breached obligations that were at the core of his fiduciary capacity: as an ESOP Committee member, he had a duty to act in the Community ESOP's best interest, disclose material information, and refrain from damaging the plan; as an officer and director of Bancshares, he had a duty to avoid involving himself in wrongful activities that created a conflict of interest, to monitor named fiduciaries that he was influential in appointing, and to ensure that the ESOP Committee and Community ESOP participants had full knowledge of material facts that bore on the prudence of continued investments in Bancshares stock. Instead of fulfilling his duties, Patterson injured the Community ESOP when he withheld critical information that the ESOP Committee needed to do its job. Had he provided the information, the Community ESOP could have taken steps to avoid purchasing additional Bancshares stock and have Patterson terminated to prevent any further loss in the value of the Community ESOP's stock holdings. Lewis Aff. ¶ 4.[2]

---

[2] Notwithstanding the Plan Document that calls for the Community ESOP to invest in Bancshares stock, the ESOP Committee **could** have redirected the Community ESOP's investments or taken other steps to preserve the plan's assets if it was in participants' interests to do so. *See* ERISA § 404(a)(1)(B), (D), 29 U.S.C. § 1104(a)(1)(B), (D); *Wood v. Southern Co.*, 396 F. Supp. 2d 1351, 1366-67 (N.D. Ga. 2005); *Kuper v. Iovenko*, 66 F.3d 1447, 1457 (6th Cir. 1995); *Moench v. Robertson*, 62 F.3d 553, 569 (3d Cir. 1995). Nor did federal securities laws prevent Patterson from making an appropriate disclosure of his wrongdoing. *See Enron, 284* F. Supp. 2d at 563-67; *Rankin v. Rots*, 278 F. Supp. 2d 853, 878 (E.D. Mich. 2003).

## CONCLUSION

The authorities discussed above and the evidentiary record before the Court establish that Community ESOP is entitled to a summary judgment in its favor on the issue of Patterson's liability for his breaches of fiduciary duty.  Community ESOP has provided expert opinion testimony on the extent of its losses, and Patterson has presented an expert witness on that issue.  The amount of Community ESOP's loss, therefore, can be established in further proceedings.

Respectfully submitted,


/s/ Randall D. Quarles
Larry B. Childs
Randall D. Quarles

Attorneys for Plaintiff Community Bancshares, Inc., and Employee Stock Ownership Plan, by and through the Pension and ESOP Administrative Committee of the Board of Directors of Community Bancshares, Inc.

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that I electronically filed the foregoing Memorandum of Law in Support of Plaintiff Community ESOP's Motion for Partial Summary Judgment with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following counsel:

Glen M. Connor, Esq.  
WHATLEY DRAKE, L.L.C.  
P. O. Box 10647  
Birmingham, AL  35202-0647

Michael T. Graham, Esq.  
McDERMOTT, WILL & EMERY  
227 West Monroe Street  
Chicago, Illinois  60606

John C. Morrow, Esq.  
BURR & FORMAN, LLP  
420 North 20th Street, Suite 3100  
Birmingham, AL  35203-5206

This the 27th day of October, 2006.

/s/ Randall D. Quarles
OF COUNSEL