FILED
2008 Apr-01  AM 09:12
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN  DIVISION

| | | |
|---|---|---|
| **PENSION AND EMPLOYEE STOCK OWNERSHIP PLAN ADMINISTRATIVE COMMITTEE OF COMMUNITY BANCSHARES, INC. on behalf of the Community Bancshares, Inc. Stock Ownership Plan;  and NORTH STAR TRUST COMPANY,** | ] ] ] ] ] ] ] ] | **CV-04-BE-00531-S** |
| **Plaintiffs,** | ] ] | |
| **v.** | ] ] | |
| **KENNON R. PATTERSON, SR.,** | ] ] | |
| **Defendant.** | ] | |

## AMENDED MEMORANDUM OPINION

The case is before the court on Plaintiffs' Motion for Partial Summary Judgment (doc. 51) and Defendant's Motion for Summary Judgment (doc. 48).  For the reasons stated in this opinion, the court will DENY Defendant's Motion for Summary Judgment.  The court will GRANT Plaintiffs' Motion for Partial Summary Judgment with respect to the claim in Counts I, II, and III that Defendant breached his fiduciary duty to disclose his own wrongful conduct to the ESOP Committee.  The court will further GRANT in part Plaintiffs' Motion for Partial Summary Judgment on Count Four of the complaint to the extent that it seeks a declaratory judgment establishing that the ESOP has a right of set-off against Defendant and that the ESOP Committee correctly delayed distributing benefits to Defendant until the right of set-off was determined. However, the court will DENY Plaintiffs' motion with respect to other claims.

1

# I.  PROCEDURAL HISTORY

The Plaintiffs in this suit are the Pension and Employee Stock Ownership Plan Administrative Committee of the Board of Directors of Community Bancshares, Inc.[1] ("ESOP Committee") and North Star Trust Company ("North Star"), Trustee of the ESOP.  They bring this action for breach of fiduciary duty under the Employee Retirement Income Security Act of 1974 ("ERISA")[2], as amended, 29 U.S.C. § 1104; 29 U.S.C. § 1109; 29 U.S.C. § 1132(a)(2) and (3) against Defendant, Kennon Patterson, former President and Chief Executive Officer of Community Bancshares, Inc. ("Bancshares") and Community Bank ("the Bank").  Plaintiffs also request the court to "enter a judgment declaring that (1) the Community ESOP has a right of set-off against the funds or assets demanded by Patterson in the amount of the damages sustained by the Community ESOP as a proximate result of Patterson's misconduct and breaches of duty; (2) that Patterson is not entitled to a payment or distribution of funds or other assets held by North Star as Trustee of the Community ESOP; and (3) that the ESOP Committee's decision and

---

[1]After this suit was filed, Superior Bancorp became the successor by merger to Community Bancshares, Inc. and Superior Bank became the successor by merger to Community Bank.  To avoid confusion, the court will refer to these two entities, the Board, and ESOP by the names used before the merger.

The court notes that the ESOP itself has no standing to sue for breach of fiduciary duty pursuant to ERISA. *See Local 159, 342, 343 & 444 v. Nor-Cal Plumbing, Inc.,* 185 F.3d 978, 981-83 (9th Cir. 1999), *cert. denied sub nom, Pettit v. Bay Area Pipe Trades Pension Trust Fund,* 528 U.S. 1156, 1205 S. Ct. 1163 (2000)("The overwhelming majority of courts have concluded that a plan has no standing to sue pursuant to ERISA. . . .").  The ESOP Committee and North Star, as fiduciaries with regard to the fund, do possess standing.  29 U.S.C. § 1109(a) and § 1132(a)(2).  The Complaint itself lists the Plaintiffs as North Star and "Community Bancshares, Inc., Employee Stock Ownership Plan, by and through the Pension and ESOP Administrative Committee of the Board of Directors of  Community Bancshares, Inc.," acknowledging that the ESOP Committee is the Plaintiff. Yet, the style in many of the filed documents incorrectly lists one of the Plaintiffs as "Community Bancshares, Inc. Employee Stock Ownership Plan."

[2]Plaintiffs' Complaint states that they bring the breach of fiduciary counts "[u]nder ERISA and/or the common law of Alabama."  However, this court struck all non-ERISA claims (doc. 18).

direction that Patterson is not entitled to a payment or distribution of funds or other assets held by North Star as Trustee of the Community ESOP is proper under the terms of the Community ESOP Plan and ERISA."

Defendant subsequently filed a counterclaim, asserting that he is entitled to benefits from the ESOP, and requesting injunctive and declaratory relief from the court, compelling the ESOP to provide those benefits.  Plaintiffs filed a Motion for Partial Summary Judgment, requesting the court to rule on the issue of Defendant's liability to the ESOP for breach of fiduciary duty with the amount of damages to be determined in further proceedings.  Defendant also filed a Motion for Summary Judgment, asking the court to find that he is entitled to benefits from the ESOP. These motions have been fully briefed.

## II.  STATEMENT OF FACTS

While disputes of fact exist in this matter, the facts listed below are generally undisputed.

Defendant, Kennon Patterson, was the founding Chairman of the Board of Directors, Chief Executive Officer and President of  Bancshares and served almost twenty years in those roles.  He was also the Chairman of the Board of Directors and Chief Executive Officer of  the Bank, which is a wholly owned subsidiary of Bancshares.  During the years that he held various positions at Bancshares and the Bank, Patterson was a participant in the Bancshares ESOP, which was an employee benefit plan as defined by the Employee Retirement Income Security Act, 29 U.S.C. § 1001, et. seq. (ERISA).

In addition to his employment at Bancshares and the Bank, Patterson personally owned and operated Heritage Valley Farms ("HVF"), a 1,100 acre horse and cattle farm located in Blountsville, Alabama, where Bancshares and the Bank were headquartered.  In 1998, Patterson

3

began constructing buildings at HVF for his personal use.  As revealed later, Patterson defrauded

the Bank, beginning at least as early as 1998 and continuing at least through mid-2000, by having

contractors bill the Bank for construction on and improvements to the HVF property.  Patterson

also mismanaged the Bank's loan portfolio and the Bank suffered loan losses as a result.

At various times during 1997, 1998, 1999, and 2002, Patterson served on the ESOP

Committee of Bancshares.  The ESOP Committee members are named fiduciaries of the ESOP

and are responsible for its day-to-day administration and operation.  The Board of Directors

selects the members of the ESOP Committee, makes the determination whether to approve any

amendments to the ESOP, and approves recommendations of the ESOP Committee.

The ESOP was designed to provide corporate finance to Bancshares.  In addition, it

enabled participating employees to share in the growth and prosperity of Bancshares and to

provide participants with an opportunity to accumulate capital for their future economic security.

It was constructed to invest primarily in Bancshares stock and, indeed, its assets consist entirely

of Bancshares stock.  It is funded solely by employer contributions, made at the discretion of

Bancshares' Board of Directors, and participants are neither required nor permitted to make

contributions.  The ESOP borrowed money from the Bank and used that money to purchase

common stock of Bancshares, which shares in turn secured the note.  The ESOP Trustees

executed the first promissory note in the amount of  $1,200,000.00 in November 1993 to

purchase Bancshares stock and 80,000 shares of purchased stock secured the note.  The

promissory note was refinanced subsequent to 1993 as the ESOP purchased additional shares.

Bancshares guaranteed payment of the loan and made annual contributions to the ESOP in an

amount sufficient to amortize the note.  Those annual contributions could not be less than the

4

amount required to cover the debt service on the ESOP loan.  During the years that Patterson held positions at Bancshares, the contributions were equal to the amount necessary to amortize the note.  Upon payment of the annual contributions to the ESOP, a portion of the shares of stock in the ESOP trust were released.  The released shares of stock were then allocated to the eligible employee's individual accounts in proportion to their compensation.

On November 19, 1998, a shareholder derivative suit ("the Towns litigation") was filed against the Board of Directors of the Bank, alleging in part that the Board had acquiesced in Patterson's mismanagement and misconduct, including self-dealing, excessive compensation, misappropriation of corporate opportunities and misappropriation of funds.  The Towns lawsuit did not include allegations of construction overcharges or fraudulent billing of the Bank for Patterson's personal construction at HVF.

Twelve days later, on December 1, 1998, the ESOP refinanced its promissory note in the amount of $2,963,842 (secured by 261,434 shares of Bancshares common stock), and purchased an additional 56,682 shares of Bancshares stock.   Although Patterson was a member of the ESOP Committee in 1997 and 1998, he did not disclose his fraudulent billings and other misconduct to the ESOP or to the ESOP Committee before the ESOP purchased additional Bancshares stock in 1998.

In June 2000, Bancshares began an investigation of its expenditures regarding the construction of a new bank office.  By July of 2000, Bancshares directors were told that subcontractors may have overcharged the company and a joint committee of independent directors began to investigate.  On July 21, 2000, a second shareholder derivative action ("the Benson litigation") was filed, this one relating to the alleged construction overcharges.  More

5

suits against Bancshares followed.

Patterson's criminal acts and other wrongdoing negatively affected both the book value and market value of Bancshares stock.  The money that Patterson diverted through the construction billings impacted the book value of Bancshares stock by reducing the company's net assets.  Patterson's general mismanagement of the Bank's loan portfolio also decreased the book value of the stock as a result of the increasingly higher amounts that the Bank had to reserve for loan losses.  The allegations regarding Patterson's construction billings and other aspects of his mismanagement prompted substantial negative publicity, causing uncertainty among the investing public and drying up the market for Bancshares stock for an extended period of time.

On January 20, 2003, Patterson filed for personal bankruptcy. On or about January 21, 2003, Pattrson obtained the release of the Bank's second mortgage on his private real estate property.   On January 27, 2003, Bancshares and the Bank terminated Patterson from his positions.  The stated reasons for his termination in the Joint Board Resolution of Bancshares and the Bank, dated January 27, 2003, included an alleged failure to report his personal bankruptcy to the Board when he sought and received a release of a second mortgage on collateral held by Bancshares.  It also included a statement that Patterson "preferred his self interest over that of the Bank, the Company, and its shareholders and by doing so has breached his fiduciary duties to the Bank and the Company. . . ."

Patterson's counsel notified the ESOP on June 16, 2003 and July 7, 2003 that Patterson was requesting payment of benefits due him from the ESOP.  On November 24, 2003, the Bank informed Patterson that the ESOP Committee denied his requests for benefits, stating in part: "The ESOP Committee has determined that your request for a distribution of your ESOP balance

should be denied . . . .The ESOP Committee has reason to believe that you have breached a fiduciary duty to the ESOP to the detriment of other participants and beneficiaries. Consequently, the ESOP Committee has decided to seek a judicial determination of whether your ESOP benefits should be used to compensate other participants for this injury."  On March 14, 2004, Plaintiffs filed this action requesting a declaratory judgment, in addition to damages, for Patterson's alleged breaches of fiduciary duty.  Patterson filed a counterclaim on July 23, 2004, alleging that Bancshares wrongfully denied benefits due him under the ESOP and requesting both damages and appropriate declaratory relief.

On October 29, 2003, Patterson was indicted of bank fraud and other charges in connection with the construction billings.  The action before this court was stayed during the pendency of his criminal suit and in March 2005, he was convicted of bank fraud and other charges in connection with the construction billings.  On December 13, 2005, he was sentenced to five years in prison.  The final judgment against Patterson also included an order that he pay restitution, jointly and severally with co-defendants, to the Bank and Travelers Insurance Company in the total amount of $1,776,974.24.   On November 20, 2007, the United States Court of Appeals for the Eleventh Circuit affirmed Patterson's conviction and, on January 2, 2008, it denied his petition for rehearing.

### III.  STANDARD OF LAW

Summary judgment is proper under Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact . . . ."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  "[A] party seeking summary judgment always bears the

initial responsibility of informing the court of the basis for its motion and identifying [the evidence that demonstrates] the absence of a genuine issue of material fact. *Id.* at 323. After the moving party demonstrates an absence of evidence to support the nonmoving party's case, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). Disagreement between the parties is not significant unless the disagreement presents a "genuine issue of material fact." *Anderson*, 477 U.S. at 247-48. A dispute of material fact is genuine if a reasonable jury, applying the relevant law to the evidence presented, could return a verdict for the nonmoving party. *See Wright v. Sanders Lead Co.*, 2006 WL 905336 , *8-9 (M.D. Ala. 2006) *aff'd,* 217 Fed. App'x 925 (11th Cir. 2007)(*citing Barfield v. Brierton*, 883 F.2d 928, 933 (11th Cir. 1989)).

When considering a motion for summary judgment, a court must view the facts "in the light most favorable to the non-moving party . . . . ." *Harris*, 127 S. Ct. at 1776. The court does not "weigh the evidence and determine the truth of the matter" but rather, simply focuses on whether a genuine issue of material fact exists. *Anderson,* 477 U.S. at 249. When a reasonable fact finder may "draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." *Allen v. Bd of Public Educ. for Bibb County*, 495 F.3d 1306, 1315 (11th Cir. 2007). "[T]he plain language of Rule 56( c) mandates the entry of summary judgment, after adequate time for discovery and upon motion against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial.

In such a situation, there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

## IV.  DISCUSSION

### A. PLAINTIFFS' MOTION ON COUNTS I, II, AND III: BREACH OF FIDUCIARY DUTY

Counts I, II and III of the complaint allege that Patterson breached a fiduciary duty under ERISA.  To state a claim for breach of fiduciary duty under ERISA, a plaintiff must allege as follows:

(1) defendant was a fiduciary of an ERISA plan;
(2) defendant was engaged in conduct constituting a breach of his or her fiduciary duty;
(3) defendant's conduct was within the scope of his or her capacity as a fiduciary; and
(4) defendant's conduct damaged the ERISA plan or the ERISA plan suffered a loss subsequent to the breach.[3]

*See Silverman v. Mutual Benefit Life Ins. Co.*, 138 F.3d 98, 106 (2nd Cir. 1998) (plaintiff must prove defendant's breach caused damage to the plan); *McDonald v. Provident Indem. Life Ins. Co.*, 60 F.3d 234, 237 (5th Cir. 1995).   Plaintiff must prove each of these elements to establish its prima facie case.

### Element One: Defendant Was a Plan Fiduciary

When determining whether a party is a fiduciary, courts not only look at the fiduciary designation in the plan documents but also apply the facts to ERISA's definition of fiduciary to see if the party – whether designated or not – is functioning as an ERISA fiduciary.  *See* 29 U.S.C. §§ 1102(a)(2) & 1102(21)(A); *see also Woods v. Southern Co.*, 396 F. Supp. 2d 1351, 1364 (N.D.

---

[3]  See discussion, *infra*, under "Element Four" of this opinion about the split in the Circuit Courts of Appeal regarding this element.

Ga. 2005); *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 284 F. Supp. 511, 543 (S.D.

Tex. 2003). The ERISA definition states as follows:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management over disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan . . . .

29 U.S.C. § 1002(21)(A). The Eleventh Circuit has observed that "[t]he term 'fiduciary' has

a broader meaning under ERISA than at common law because ERISA defines 'fiduciary' not

in terms of formal trusteeship, but in functional terms of control and authority over the

plan.'" *Hunt v. Hawthorne Assocs., Inc.*, 119 F.3d 888, 892  n.2 (11th Cir. 1997)(quoting

*Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993)).

    The simplest means of determining whether Patterson functioned as a fiduciary under

ERISA is to look to the Bancshares ESOP itself and whom it names as fiduciaries. Section

20 of the Bancshares ESOP, entitled "Administration," specifies that "the daily

administration of the [ESOP] will be conducted by an Administrative Committee composed

of individuals appointed by the Board of Directors to serve at its pleasure and without

compensation. *The Committee members shall be the named fiduciaries* with complete

discretionary authority to control and manage the operations and administration of the

[ESOP]." (emphasis added).  Patterson was an ESOP Committee member in 1998 and 1999

and thus, a named fiduciary during the time period that he committed the wrongful acts and

non-disclosures identified in the complaint.  Consequently, the undisputed facts[4] establish

that Patterson was a designated fiduciary of the ESOP during the critical time period.

Patterson's fiduciary status may well be broader than simply being a named fiduciary

as a member of the ESOP Committee.  As previously noted, fiduciary status is defined not

only by reference to particular titles or committee membership but also by authority that a

particular person has or exercises over a plan.  *See Bannistor v. Ullman,* 287 F.3d 394, 401

(5th Cir. 2002).  Patterson held influential positions at Bancshares as its founding Chairman

of the Board of Directors, CEO and President.   While those titles may not in and of

themselves confer fiduciary status upon Patterson, they may reveal the pervasive authority

that Patterson exercised over all aspects of Bancshares and the Bank.  If that pervasive

authority included the exercise of individual discretionary authority over the ESOP and its

assets, then Defendant would be deemed an ESOP fiduciary.  *See Prof'l Helicopter Pilots*

*Assoc. v. Denison,* 804 F. Supp. 1447, 1451 (M.D. Ala. 1992).

In any event, Patterson's membership on the Board of Directors of Bancshares –

which Board exercised the power to appoint, retain and remove ESOP fiduciaries – suggests

that Patterson may well have exercised discretionary control respecting the management and

administration of the ESOP apart from his membership on the ESOP Committee.  *See In re*

*Enron,* 284 F. Supp. at 552-53 ("A person or entity that has the power to appoint, retain,

---

[4] Patterson does not dispute that he was a member of the ESOP Committee or that the ESOP Committee was a named fiduciary of the ESOP.  In ¶ 12 of his Answer, he admits that "at various times during his tenure at Bancshares, he acted as a fiduciary with respect to the Plan."  In his Memorandum in Support of Summary Judgment, however, he states that he "does not concede that he was a fiduciary to the Plan."  His position appears to be that although he admits to being a named fiduciary to the ESOP, he does not concede that he was acting in a fiduciary capacity when he committed the wrongful actions and he does not concede that he had a duty to reveal his wrongful actions.

11

and/or remove a plan fiduciary from his position has discretionary authority or control over the management of a plan and is a fiduciary to the extent that he or it exercises that power.") (citing 4th, 5th, 7th, & 9th Circuit cases).  Consequently, the court notes, without making a specific finding, that Patterson's fiduciary status is not necessarily limited by the dates that he served on the ESOP Committee.  The court thus concludes that Patterson served as a fiduciary at the very least while he served on the ESOP Committee.

### Elements Two and Three: Defendant Breached His Fiduciary Duties While Acting in a Fiduciary Capacity

Having determined that Patterson was a fiduciary, the court must next determine what duties that status as fiduciary imposed upon Patterson and whether Patterson breached them. Although ERISA does not explicitly enumerate all powers and duties of ERISA trustees, Section 404(a)(1) of ERISA does specify some of the duties that fiduciaries owe to plans:

> A fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and
> (A) for the exclusive purpose of:
> (i) providing benefits to participants and their beneficiaries; and
> (ii) defraying reasonable expenses of administering the Plan;
> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;
> (C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and
> (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter.

29 U.S.C. § 1104(a)(1).

These listed fiduciary duties originate in the common law of trust and traditional

trust principles, yet "ERISA's standards and procedural protections partly reflect a congressional determination that the common law of trusts did not offer completely satisfactory protection." *Varity Corp.*, 516 U.S. at 497.   The Eleventh Circuit has explained that ERISA "not only adopts familiar trust principles, but also supplements those principles with more exacting standards. . . ." *Useden v. Acker*, 947 F.2d 1563, 1581 (11th Cir. 1991). The fiduciary duties that ERISA imposes are among the "highest known to law."  *Herman v. NationsBank Trust Co.*, 126 F.3d 1354, 1361 (11th Cir. 1997) (quoting *Donovan v. Bierwirth,* 680 F.2d 263, 272 n. 8 (2nd Cir. 1982)).  In determining whether a fiduciary has met his duty of care, courts use an objective measure based on the circumstances present at the time of the fiduciary's action and without the benefit of hindsight.  *See Chao v. Merino*, 452 F. 3d 174, 182 (2nd Cir. 2006).

The court now turns to the complaint to determine what breaches of fiduciary duty Plaintiffs are alleging.  Although the allegations in the counts overlap, they list generally as follows:

Count I:       Patterson breached his fiduciary duties to the ESOP by failing to act in the ESOP's best interests, by committing wrongful affirmative acts that damaged the ESOP, and by failing to disclose to the ESOP Committee the information that it needed to make prudent investment decisions;

Count II:      Patterson breached his fiduciary duties to the ESOP by failing to disclose material facts about his own wrongful conduct and the financial affairs of Bancshares and the Bank, which failure damaged the ESOP;

Count III:     Patterson breached his fiduciary duties to the ESOP by failing to select prudent investments, to monitor the ESOP, and to disclose material information about his own wrongful conduct, which breaches damaged the ESOP.

The wrongful conduct to which these counts refer are criminal acts for which Patterson has been tried and convicted: conspiring to commit bank fraud, to commit embezzlement and to make false entries; committing bank fraud; making false bank entries; and making false statements on tax returns.  This conviction arises out of Patterson's actions of causing the Bank to pay for substantial work on his personal residence and estate and causing Bank employees and contractors to perform work for Patterson's personal benefit.  The Eleventh Circuit has affirmed the conviction and denied his petition for rehearing.  Despite the conviction and the finality of that judgment, Patterson continues to claim innocence and asserts that his criminal case is immaterial to the matter before the court.  Accordingly, this court will address whether Plaintiffs must prove the acts upon which the allegations of fiduciary breach arise or whether those acts must be deemed established by his criminal conviction.

### a. Effect of Criminal Conviction in Establishing Guilt for Criminal Acts

The Eleventh Circuit follows the rule that final judgments of a court of competent jurisdiction have a collateral estoppel effect in subsequent actions when four conditions are met:

> 1) the issue is identical in both the prior and current action;
> 2) the issue was actually litigated;
> 3) the determination of the issue was critical and necessary to the judgment in the prior action; and
> 4) the burden of persuasion in the subsequent action is not significantly heavier.

*Sec. & Exch. Comm'n v. Bilzerian*, 153 F.3d 1278, 1281 (11th Cir. 1998).  "The party seeking to invoke collateral estoppel bears the burden of proving that the necessary elements have been

satisfied." *McWhorter v. Dixie Nat'l Life Ins. Co.*, 887 F.2d 1564, 1566 (11th Cir. 1989).

Patterson claims that the Plaintiffs failed to establish the first element, insisting that the issues are not identical in both actions. The court disagrees, finding that Plaintiffs have established all four elements, including element one. Although this case does present issues not litigated in the underlying criminal action, the critical underlying issue is identical: did Patterson commit bank fraud by causing the Bank to pay for substantial work on his personal residence and estate and causing Bank employees and contractors to perform work for Patterson's personal benefit? These particular criminal acts *are* precisely at issue in the instant case  because Plaintiffs assert that those same criminal acts and Patterson's failure to disclose them breached his fiduciary duty to the ESOP. The criminal acts are a building block of the breach of fiduciary duty case; if Patterson did not commit the criminal acts, then no breach exists. Because a jury specifically addressed that foundational issue, because that issue was critical and necessary to its guilty verdict, and because the burden of persuasion - guilt beyond a reasonable doubt - was higher in the criminal case than in this subsequent civil case, the court finds that the doctrine of collateral estoppel prevents Patterson from disputing his guilt in this civil case. Therefore, no genuine issue of material fact exists regarding Patterson's guilt for fraudulently charging the Bank for substantial work on his personal residence and estate, and fraudulently causing Bank employees and contractors to perform work for his personal benefit.

Given that fraud, the court must determine whether Patterson breached a fiduciary duty to the ESOP. Although these counts identify multiple actions/inactions of Patterson as breaches of his fiduciary duty, Plaintiffs' briefs focus heavily on one: Patterson's failure to disclose his bank fraud to other ESOP Committee members and ESOP participants before the 1998 refinancing of

the ESOP's promissory note and purchasing of additional Bancshares stock.  Consequently, the court will first examine Patterson's non-disclosure of his bank fraud.

### *b.  Breach of Duty Through Failure to Disclose*

#### 1.  Undisputed Failure to Disclose

Plaintiffs provide undisputed evidence that Patterson did not disclose his misdeeds to the other members of the ESOP Committee or indeed, any one at Bancshares or the Bank who was not part of his conspiracy.  At the time of his deposition, Patterson  insisted – in spite of his conviction – that he was innocent.  In light of that position, his admission in that deposition that he never told anyone on the ESOP committee about his wrongful acts of billing the bank for construction on his home is hardly surprising.  John Lewis, a Bancshares director during the critical period of 1997 through the present, confirms that Patterson did not tell the leadership of Bancshares or the Bank, which leadership included ESOP Committee members, about his criminal acts.  Given this consistent testimony, Patterson does not attempt to dispute his non-disclosure; he simply claims that he had no duty to disclose.  The court, then, accepts Plaintiffs' argument that no genuine issue of material fact exists as to Patterson's non-disclosure and must next address whether Patterson had a duty to disclose.

#### 2.  Duty to Disclose[5]

---

[5]  In Count III, Plaintiffs' complaint includes in its list of breaches of fiduciary duty Patterson's failure to select prudent investments.  The failure to select prudent investments refers to Patterson's decision, as part of the 1998 ESOP Committee, to purchase additional Bancshares stocks knowing that this investment was imprudent because of his illegal acts. Although Patterson undoubtedly wielded much authority and influence on the ESOP Committee because of his positions as President and Chairman of the Board of the Bank and Bancshares, the decision whether to purchase the 1998 stock was presumably a shared decision of the entire committee. Accordingly, this theory seems to be a restatement of the previously discussed theory that Patterson should have disclosed his fraud to the committee before the 1998 stock purchase; the court will deem this allegation to be subsumed under the "failure to disclose" theory.

Although ERISA lists specific situations in which a plan fiduciary must disclose information (29 U.S.C. §§ 1021-1031), Plaintiffs' argument in support of a duty to disclose does not rely upon these provisions. Rather, it relies upon the common law of trusts which supplement ERISA. *See Central States, S.E. & S.W. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 570 (1985).

> a.  *"Two Hat" Argument:   Defendant Was Not Acting in a Fiduciary Capacity*

Patterson argues that he was not acting in a fiduciary capacity to the ESOP when he committed wrongful acts and had no duty to disclose them. In so arguing, he is invoking ERISA's "two hat" theory, claiming that he was wearing his non-fiduciary hat when he committed the wrongful acts but did no wrong when he was wearing his fiduciary hat and making ESOP decisions. Therefore, the argument goes, he may be liable to the Bank and Bancshares for his wrongful acts under other legal theories, but he cannot be liable under ERISA.

Patterson's arguments address one area in which ERISA law differs from the common law of trusts. Under traditional trust law, a trustee must wear only one hat when making fiduciary decisions and may have no interest adverse to the beneficiary. The nature of ERISA, however, renders the "one hat" fiduciary requirement impractical; ESOP Committee members are rarely impartial trustees hired from outside the company to make investment decisions but, instead, are often company officers and directors who have multiple roles in company life. Given the multiplicity of those roles and the potential conflicts inherent in those roles, courts have struggled to define a fiduciary's duty to disclose in the ERISA context.

Judge Forester, a federal judge sitting in the Northern District of Georgia, presented the following analysis:

A fundamental premise of ERISA is that employer-fiduciaries wear "two hats," acting both as a fiduciary to an ERISA plan and as an employer with an obligation to the company.  Under this doctrine, employers are not prohibited from acting in accordance with their interests as employers, even when adverse to the interests of the beneficiaries, so long as they are not acting as an ERISA fiduciary.  Therefore, disclosure duties under ERISA extend only to information about the ERISA plan and not to any information in the possession of the ERISA fiduciary in his capacity as employer.

However, a growing number of circuits have found that the distinction between the employer and fiduciary "hats" begins to blur when the company circumstances are such that business details directly impact the administration of the ERISA plan.  In *In re Enron*, the Southern District of Texas addressed an alleged breach of the fiduciary duty to disclose business information to plan participants and noted that "[t]he fiduciary's duty to disclose is an area of developing and controversial law."  Courts are now more willing to find an affirmative fiduciary duty to disclose information beyond the traditional duties to disclose specified in the statute or the common law obligation to respond to specific requests from plan participants or beneficiaries.  However, this new affirmative duty to disclose has only been imposed in "special circumstances ...."

*Hill v. BellSouth Corp.*, 313 F. Supp.2d 1361, 1368-9 (N.D. Ga. 2004) (quoting *In re Enron*, 284 F. Supp.2d 511, 559 (S.D. Tex. 2003); other citations omitted)).  Do the facts in the instant case constitute "special circumstances" which trigger a duty to disclose?

One type of special circumstance giving rise to a duty to disclose is the fiduciary's own fraudulent misconduct.  In *In re Enron*, the federal court held that the plaintiff had stated a valid ERISA claim for breach of fiduciary duty against  Ken Lay and other defendants premised on their duty to disclose their own misconduct.  While noting that the Fifth Circuit did not apply a broad duty to disclose upon plan fiduciaries, the court nevertheless recognized an affirmative duty to disclose to plan participants facts that would have an "'extreme impact' on a plan as a whole, where plan participants generally could be materially and negatively affected." 284 F. Supp. 2d at 559.  Ruling on a motion to dismiss,

18

the court found that if plaintiff could prove the complaint allegations –  that defendants

engaged in fraudulent accounting, concealed their deceitful business practices and concealed

the company's "precarious, swiftly deteriorating financial condition" and intended to induce

the plan participants' continued investment in the pension plans' purchase and holding of

Enron stock –  then they would fall under the Fifth Circuit's "extreme impact" standard.  *Id.*

Similarly, in two published opinions in the case of *Canale v. Yegen*, 782 F. Supp.

963 (D. N.J. 1992), and 789 F. Supp. 147 (D. N.J. 1992), the federal court sitting in New

Jersey found that defendants had breached their fiduciary duties under ERISA[6] where the

ESOP  fiduciaries concealed their own illegal acts that diminished the value of the ESOP

investment.  Rejecting defendants' "two hats" arguments, the court stated:

> Such an argument, however, misconceives the gravamen of plaintiff's
> complaint.  Plaintiff charges that defendants failed to diversify the Plan's
> assets and dissipated those assets - allegations relating to defendants' role as
> Plan administrators.  Defendants can be charged with knowledge of the
> allegedly fraudulent acts of Integrity, its officers and directors, because
> defendants are the very individuals alleged to have performed or ordered the
> fraud allegedly perpetrated by Integrity.  *However, the basis for this ERISA
> action is not the perpetration of the fraud on Integrity's shareholders itself,
> but the fact that, knowing the Plan's investment had been impaired by their
> own fraudulent acts, defendants, acting as fiduciaries, failed to take any steps
> to protect the Plan's assets from dissipation.*

782 F. Supp. 968. (emphasis added).  In its second opinion, the court provided this additional

explanation:

> Although ESOP plan administrators who are also company officers or directors
> have no fiduciary duty to plan beneficiaries for actions taken in their capacity as

---

[6]While the fiduciary duty breached in *Canale* was phrased as a duty to diversify not a duty to disclose, that distinction is one of semantics instead of substance.  In both *Canale* and the instant case, plaintiffs complained that defendant(s) concealed bad acts that threatened to materially harm the company in which the ESOP owned stock and further complained that, in light of those bad acts, defendant(s) had a fiduciary duty to protect the ESOP assets by changing investment decisions.  *See Canale*, 782 F. Supp. at 968.

company employees, it is the view of the court than an employee/ESOP
fiduciary's *knowledge* that she committed a fraudulent act in her capacity as an
employee may be ascribed to her in her capacity as ESOP trustee.  Failure to act
prudently on the basis of that knowledge would then violate her fiduciary duties
in her capacity as plan administrator.

789 F. Supp. at 154 n. 5 (emphasis by *Canale* court).

The courts' holdings in *In re Enron* and *Canale* support a finding of breach of fiduciary
duty in the instant case.  Like the *Enron* defendants, Patterson committed fraud against the
company, engaged in fraudulent accounting, concealed that fraud from the ESOP administrators
and ESOP plan participants, and encouraged the continued purchase of company stock.  Like the
*Canale* defendants, Patterson in the instant case not only committed fraudulent acts but also
"knowing the Plan's investment had been impaired by [his] own fraudulent acts, . . . failed to
take any steps to protect the Plan's assets. . . ."  *See Canale*, 782 F. Supp. at 968.  While those
decisions are not binding upon this court, they nevertheless contain in-depth analysis of
analogous facts and represent persuasive authority.  This court finds that the instant case  presents
"special circumstances with a potentially 'extreme impact' on the plan as a whole, where plan
participants generally could be materially and negatively affected . . . ."  *In re Enron*, 284 F.
Supp. at 559.  The court consequently finds that the special circumstances of the instant case
imposed upon Patterson a duty to disclose and further finds that he breached his duty by
remaining silent.

Patterson's reliance on the "two hat" concept as a bar to liability is misplaced.  Even if he
was wearing a different corporate hat at the time he committed the fraud, when he donned the
Plan Administrator hat in 1998 and made investment decisions about the ESOP, he did so with
full knowledge of his own fraudulent misconduct that would negatively affect the Plan.  He may

have figuratively "taken off" the other hat, but he did not also take away knowledge of his fraud; that knowledge remained in his head even if he kept it "under his hat," his new one, that is.  In 1998, when he and the rest of the ESOP committee were deciding whether to purchase additional Bancshares stock, he knew that he had charged the bank for significant construction charges on his personal property and  made fraudulent bank entries.  He knew that those actions posed a danger of extreme impact on the Bank, its holding company, and its holding company stock.  No matter which hat Patterson wore when he committed his fraud, he still owed a duty to disclose his fraud and protect the ESOP when he put on his ESOP Committee hat.  Yet, he failed to do so as the ESOP Committee made plans to purchase additional stock.

Patterson cites various cases to support his position that ERISA does not impose upon plan fiduciaries a duty to inform plan participants about business activities on the financial health of the company.  None of these cases addresses the specific issue of whether a fiduciary plan administrator has a duty to disclose his own illegal acts that affect company stock assets when the plan is considering purchasing more company stock.  *See Varity Corp. v. Howe,* 516 U.S. 489 (1996) (finding that Varity's deception violated its fiduciary duty to the plan under ERISA); *Local Union 2134, United Mine Workers of Am. v. Powhatan Fuel,* Inc., 828 F.2d 710, 712-13 (11th Cir. 1987) (finding that the company president's failure to disclose a business decision regarding the use of his struggling company's funds did not constitute a breach of duty to the ESOP; no indication that president was also a ESOP administrator); *Sprague v. General Motors Corp.* 133 F.3d 388, 405 (6th Cir. 1999) (en banc) (alleging no false representation or illegal act; company failed to remind and warn employees that the plan's terms were subject to change); *Eddy v. Colonial Life Ins. Co.*, 919 F.2d 747 (D.C. Cir. 1990) (finding that a fiduciary has the

21

duty to speak truthfully if and when it speaks); *Smith v. Delta Airlines*, 422 F. Supp. 2d 1310

(N.D. Ga. 2006)(alleging no fraud or other crime); *Pedraza v. Coca-Cola Co.,* 2006 WL

2934989 (N.D. Ga. Sept. 29, 2006)(noting a split of opinion about extent of fiduciary duty to

disclose but not reaching this issue);  *Vartanian v. Monsanto Corp.*, 880 F. Supp. 63, 69 (D.

Mass 1995) (holding that "retirees' allegations that they relied on published policy statements of

employer's president that there would be 'no major event such as an early retirement plan and/or

major severance program offered' did not implicate employer's fiduciary duty so as to state claim

under ERISA for breach of fiduciary duty"); *Sweeney v. Kroger*, 773 F. Supp. 1266 (E.D. Mo.

1991)(alleging no crime or fraud; plan administrators did not inform plaintiff about possible

corporate restructuring and company acquisitions).  Having found no authority in these cases to

the contrary, the court rules that the special circumstances of the instant case imposed upon

Patterson a duty to disclose and further finds that he breached his duty by remaining silent.

### b.  Public Knowledge Argument

Patterson does acknowledge one situation in which courts have imposed upon a defendant

fiduciary an affirmative duty to disclose without a specific request for the information: when that

information is in the exclusive knowledge of the fiduciary.  *See, e.g., Grimes v. Prudential Fin.

Inc.,* 2006 WL 2990025, *4 (E.D. Ark.  Oct. 18, 2006).  Patterson argues, however, that the

instant case cannot fall within the "exclusive knowledge" situation because Patterson's

misconduct was public knowledge.  He points to the Towns litigation, the first derivative lawsuit

that was filed in November 1998, before the ESOP committee purchased the additional stock.

The Towns lawsuit alleged that members of the Bancshares Board of Directors, which included

Patterson, "breached their fiduciary duty to Community and its shareholders, engaged in fraud,

22

fraudulent concealment, suppression of material fact, failed to supervise management, conspired to conceal wrongful acts from Community's shareholders, and paid themselves excessive director fees." (Def.'s Resp. to Pl.'s Statement of Facts ¶ II. 7). Additionally, the Towns Complaint alleged that the Board acquiesced in Patterson's mismanagement and misconduct. The court notes that the Towns Complaint was filed a mere twelve *days* before the ESOP purchased additional stock and no evidence exists in the record that the ESOP committee was in fact aware of the lawsuit at the time of the 1998 stock purchase.  Patterson has presented no evidence that the media publicized this lawsuit before December 1, 1998 nor has he presented any documents of the ESOP Committee referencing it on or before December 1, 1998.

Even assuming *arguendo* that the mere filing of the Towns Complaint automatically made its allegations public knowledge, those allegations point to different misconduct on the part of Patterson and the Board; they did *not* include construction overcharges or fraudulent billing of the Bank for construction personal to Patterson.  The evidence on the record indicates that the misconduct whose nondisclosure forms the basis of the breach of fiduciary duty – the fraudulent construction billings – was neither public knowledge nor within the knowledge of the Bank/Bancshares/ESOP Committee leadership at the time of the 1998 stock purchase but instead, was discovered in mid-2000, a year and a half after the 1998 stock purchase.  However, Patterson began defrauding the bank as early as 1998 and he knew what the public and the leadership of Bancshares, the Bank and the ESOP Committee did not.  Therefore, Patterson has not demonstrated that his misconduct was "public knowledge" at the time of the 1998 stock purchase.

23

### c. Securities Law Shield Argument

As an alternative to his "public knowledge" argument, Patterson also excuses his non-disclosure by claiming that any selective revelation of non-public information would violate securities laws.  Through this disingenuous argument, Patterson attempts to maneuver Plaintiffs into a "catch-22" situation:  if the information *is* public knowledge, then Patterson has no obligation to reveal it and if it is *not* in the public domain, then he cannot legally reveal it to the ESOP Committee.

The defendants in *In re Enron* also tried to use securities laws as a shield to excuse their non-disclosure of executive misconduct.  The district court in that case, however, rejected their ploy:

> Defendants' argument that despite the duty of loyalty, a fiduciary should make no disclosure to the plan participants, because under the securities laws he cannot selectively disclose non-public information, translates in essence into an argument that the fiduciary should both breach his duty under ERISA and, in violation of the securities laws, become part of the alleged fraudulent scheme to conceal Enron's financial condition to the continuing detriment of current and prospective Enron shareholders, which include his plan's participants.  This Court does not believe that Congress, ERISA, or the federal securities statutes sanction such conduct or such a solution, i.e., violating all the statutes and conning the public. As a matter of public policy, the statutes should be interpreted to require that persons *follow* the laws, not undermine them.  They should be construed not to cancel out the disclosure obligations under both statutes or to mandate concealment, which would only serve to make the harm more widespread; the statutes should be construed to require, as they do, disclosure by Enron officials and plan fiduciaries of Enron's concealed, material financial status to the investing public generally, including plan participants, whether "impractical" or not, because continued silence and deceit would only encourage the alleged fraud and increase the extent of injury.

284 F. Supp. 2d at 565.  This court agrees; it will not construe the applicable securities statutes to shield a fiduciary who otherwise has an obligation to disclose his material fraud and misconduct.

### d.  Argument that ESOP Documents Mandated Company Stock Investment

Patterson further argues that he did not breach his fiduciary duty in allowing the 1998 purchase of additional Bancshares stock because the ESOP mandated continued investment in Bancshares stock; consequently, his disclosure would not have affected the 1998 stock purchase. He makes this argument in the context of the duty to invest prudently, but the argument applies equally to the duty to disclose.  Patterson correctly states that under the express terms of ESOP documents, the ESOP was to be invested primarily in Bancshares stock.  Established ERISA jurisprudence favors the following of instructions set forth in the ESOP and limits the circumstances in which fiduciaries may disregard the express terms of the ESOP.  For example for tax-qualified ESOPs like the Bancshares plan, ERISA overrides the standard requirement to diversify the trust investments, and instead allows up to 100% of the ESOP assets to be held in employer stocks.  *See* 29 U.S.C. § 1104(a)(1)(B).

However, one circumstance justifying the disregard of ESOP terms of investment is when that investment becomes imprudent.  *See* 29 U.S.C. § 1104(a)(1)(B) & (D); *Woods*, 396 F. Supp. 2d at 1366-67.  Patterson cites case law supporting his position that investing in company stock according to ESOP plan documents is presumptively prudent.  *See, e.g.,  Moench v. Robertson*, 62 F.3d 553, 568-72 (3rd Cir. 1995)   Given that presumption, he argues, the ESOP Committee's decision to purchase additional Bancshares stock in 1998 was prudent and cannot form the basis of breach of fiduciary duty.

The Eleventh Circuit has not yet adopted the presumption of prudence standard upon which Patterson relies.  *See Pedraza v. Coca-Cola Co*., 456 F. Supp. 2d 1262, 1274 (N.D. Ga. 2006) (noting that some other circuits recognize the presumption of prudence but that the

Eleventh Circuit has not yet addressed or adopted it); *Hill v. Bellsouth*, 313 F. Supp. 2d 1361, 1367 (N.D. Ga. 2004) .  Accordingly, this court need not apply the presumption and will not do so in the instant case to allow Patterson to excuse the non-disclosure of his own wrongful acts. The ESOP Committee in the instant case was free to – and indeed, was obligated to – deviate from the ESOP plan if the investment terms became inconsistent with ERISA.  *See Herman*, 126 F.3d at 1361 ("If NationsBank determined, or should have determined [that following the ESOP plan] w[as] imprudent, then Nationsbank was required to ignore that provision. . . ."); *see also Woods,* 396 F. Supp. 2d at 1366 (finding that the complaint alleged sufficient facts to suggest that ESOP fiduciaries would be imprudent not to disregard plan provisions and shed investment in company subsidiary stock  when they became aware that a subsidiary was engaging in unregulated energy trading and causing a public scandal*); In re Syncor ERISA Litigation*, 351 F. Supp. 2d 970, 979-83 (C.D. Cal 2004)(finding that the allegations of defendants' illegal bribery scheme and serious mismanagement overcame the presumption of prudence of continued investment in company stock).

This court agrees with Plaintiffs that the ESOP Committee could have deviated from the ESOP provisions and chosen not to invest in Bancshares stock if and when the ESOP Committee obtained notice that the corporation was facing serious mismanagement issues and public scandal.  Accordingly, Patterson cannot excuse his silence based upon the ESOP documents' investment mandates.

Having considered the parties' arguments, the court finds that the special circumstances of the instant case imposed upon Patterson a duty to disclose his own misconduct.  It further finds that the information he failed to disclose was not "public knowledge" and that the securities

laws and ESOP documents' mandates do not excuse his non-disclosure.  Accordingly, when the ESOP Committee was making decisions regarding the purchase of stock in 1998, Patterson's failure to disclose his own misconduct breached his fiduciary duty to the ESOP.

### c.  Other Alleged Breaches of Fiduciary Duty

In addition to the failure to disclose allegations, Plaintiffs' complaint also lists as alternative theories other alleged breaches of fiduciary duty.  Count III alleges a breach arising out of Patterson's failure to monitor the Bancshares ESOP.  Because the damages arising out of that breach would be identical to the damages arising from the duty to disclose in the instant case, the court need not reach this alternative theory.

Count I's alternative theories include claims of breaches premised upon Patterson's commission of affirmative acts that damaged the ESOP and his failure to act in the ESOP's best interests.  The court will, therefore, examine these theories.

#### 1.  Alleged Breach of Duty through Affirmative Wrongful Acts

Patterson is collaterally estopped from denying he committed wrongful acts that damaged the Bank and Bancshares by his criminal conviction.  Although those wrongful acts undoubtedly impacted the value of the ESOP stock, committing wrongful acts that negatively impacted ESOP stock does not automatically give rise to liability under ERISA.  As discussed previously, those wrongful acts are only actionable under ERISA if a defendant was performing a fiduciary function to the ESOP when he committed them.  *See Pegram v. Herdrich,* 530 U.S. 211, 225 (2000).  As the Eight Circuit Court of Appeals has explained:

> While corporate conduct and fiduciary responsibilities may be linked, not all corporate acts are fiduciary acts.  Virtually all of an employer's significant business decisions affect the value of its stock, and therefore, the benefits that ESOP plan

27

> participants will ultimately receive.  However, [ERISA Section 404] attaches only
> to transactions that involve investing the ESOP's assets or administering the plan.
> A broader rule would make ESOP fiduciaries virtual guarantors of the financial
> success of the plan.

*Martin v. Feilen*, 965 F.2d 660, 666 (8th Cir. 1992).

As the court has ruled previously, Plaintiffs have proven that Patterson was acting in a

fiduciary capacity to the ESOP when he participated in the ESOP Committee decision to

purchase additional Bancshares stock in 1998 and when he failed to disclose his own wrongful

acts threatening the value of that stock.  The court finds, however, that Plaintiffs have not proven

that he was acting in a fiduciary capacity to the ESOP when he actually committed those

wrongful acts.  Accordingly, Plaintiffs have not proven at this juncture that Patterson's

commission of those affirmative wrongful acts constituted a separate breach of his fiduciary duty

to the ESOP.

### 2.    Alleged Breach of Duty to Avoid Conflicts of Interest

In support of their alternative theory that Patterson breached his duty to act in the ESOP's

best interests, Plaintiffs cite the Eleventh Circuit case of *Deak v. Mates & Pilots Pension Plan*,

821 F.2d 572, 580-81 (11th Cir. 1987), *cert. denied,* 484 U.S. 1005 (1988).  They claim that

Patterson, like each of the plan beneficiaries in *Deak*, breached his fiduciary duty to the plan

beneficiaries when he placed himself in a position that conflicted with his duty of loyalty to the

plan.  As the Eleventh Circuit noted in *Deak*,

> A Trustee is a fiduciary of all participants and beneficiaries and of a Plan and is
> required to 'discharge his duties with respect to a Plan solely in the interest of
> the participants and beneficiaries and - (A) for the exclusive purpose of: (i)
> providing benefits to participants and their beneficiaries.'  29 U.S.C. §
> 1104(a)(1)(A)(i).  Despite the restrictive language of section 1104(a)(1)(A)(I),
> that a trustee act '*solely* in the interest of the participants and beneficiaries,' §

28

> 1108 explicitly permits a fiduciary to serve as an officer, employee, agent, or other representative of a union or an employer.  29 U.S.C. § 1108(c)(3).  This provision allows a trustee to serve as a fiduciary to two principals.  The potential of a conflict of interest arising from this role places an onerous burden on the trustee not to violate fiduciary duties to one party while acting for the primary benefit of the other.

*Id.* at 579.

Yet, despite the caveat to avoid conflicts of interest, courts have recognized the practical difficulties for ESOP administrators, who usually serve in other company positions, to do so.  As noted in the "two hat" analysis discussed previously in this opinion, courts have generally found breaches of the duty to avoid conflicts of interest only in situations when the fiduciary was acting as a fiduciary at the time of the conflicted act.  *See, e.g., Deak*, 821 F.2d at 580–81; *Hill*, 313 F. Supp. 2d at 1370 (noting that, under a duty to avoid conflicts of interest theory, the key issue was whether the fiduciary was acting as a fiduciary at the time); *In re Worldcom, Inc.*, 263 F. Supp. 2d 745, 768 (S.D. N.Y. 2003) (no breach of duty of loyalty underline where plaintiff identified source of conflict but failed to allege that defendant was wearing fiduciary hat when he acted on his personal interest).  In *Deak*, the plan fiduciaries, who were also union officials, were indisputably wearing their fiduciary hats when they enacted plan amendments that promoted union interests to the detriment of plan beneficiaries.  Thus the Eleventh Circuit found they breached their fiduciary duty of loyalty.  821 F.2d at 581.

In the instant case, the court has previously found that Patterson breached his fiduciary duty when he failed to disclose his wrongful acts to the other ESOP Committee members in connection with the 1998 stock purchase.  To the extent that his duty of loyalty/duty to avoid conflicts coincides with his duty to disclose, the act is the same and the damage is the same.  But

to the extent that Plaintiffs allege that Patterson's other actions or inactions breached his duty to avoid conflicts, the court finds that they have not demonstrated at this point in the proceedings that he committed those acts or inactions *while wearing a fiduciary hat*.  Accordingly, they have established the breach of the fiduciary duty to avoid conflicts only to the extent that Patterson failed to disclose his wrongful acts to the ESOP Committee and have established no further or separate breach of that duty.

### Element Four: Defendant's Breach Caused Damage to the ESOP

Patterson argues that Plaintiffs have failed to provide evidence that his breach caused damage to the ESOP.  A division exists among the Circuit Courts of Appeal regarding who bears the burden of demonstrating causation.  *See In re Enron*, 284 F. Supp. 2d at 579.  To support his claim that Plaintiffs have that burden, Patterson cites a case from the Second Circuit, *Silverman v. Mutual Benefit Life Ins. Co.*, 138 F. 3d 98, 105-06 (2nd Cir), *cert. denied,* 525 U.S. 876, 1119 S.Ct. 178, 142 L.Ed.2d 145 (1998).  The Sixth Circuit and Seventh Circuit agree with this allocation of burdens.  *See Kuper v. Iovenko,* 66 F.3d 1447, 1459-60 (6th Cir. 1995); *Brandt v. Grounds*, 687 F.2d 895, 898 (7th Cir. 1982).  These cases place the burden of proving causation squarely upon a plaintiff because it is an element of the ERISA claim that the defendant's action/inaction resulted in loss to the fund.  *See, e.g.*, *Silverman,* 138 F.3d at 105-106; *see also* 29 U.S.C. §§ 1109(a), 1105(a)(3).

On the other hand, the Fifth and Eighth Circuits view the burden differently; those courts of appeal would require a plaintiff to prove a breach of fiduciary duty and a prima facie case of loss by the plan.  Upon this showing, the burden would shift to the defendant to prove that his breach *did not* cause the loss.  *See McDonald v. Provident Indem. Life Ins. Co.,* 60 F.3d 234, 237

(5th Cir. 1995); *Martin v. Feilen*, 965 F.2d 660, 671 (8th Cir. 1992), *cert. denied sub nom. Henss v. Martin*, 506 U.S. 1054, 113 S.Ct. 979, 122 L.Ed.2d 133 (1993).  This allocation of burden corresponds more closely to the allocation used in the common law of trusts, to which ERISA is closely tied, where the fiduciary has the burden of disproving causation after a plaintiff has proved his *prima facie* case of breach and loss to the trust.  *See Martin v. Feilen*, 965 F.2d 660, 671 (8th Cir. 1992); Bogert, The Law of Trusts and Trustees § 871 (2d revised ed. 1982 & Supp. 1991).

The parties have pointed the court to no case – and indeed, the court is aware of no case – of the Eleventh Circuit addressing the allocation of the causation burden in such cases.  Absent Eleventh Circuit guidance on this issue, the court will evaluate the case alternatively, using both burden allocations.

Applying the Fifth and Eighth Circuits' standards, Plaintiffs have met their burden.  As noted previously, they have proven that Patterson breached his duty to disclose.  They have also presented undisputed[7] evidence that the ESOP Committee would not have purchased company stock in 1998 if Patterson had disclosed his fraud and undisputed evidence from both parties' experts that the company stock  purchased in 1998 suffered a loss in value.  Unless Patterson has offered evidence *disproving* the causal connection between the breach and the loss, then Plaintiffs have established their *prima facie* case.  Patterson's only attempt to disprove the causal connection is a statement that the proof of damage relates to the disclosure of the misconduct, not

---

[7]The court has rejected Patterson's argument that the ESOP Committee had no choice but to buy company stock and could not vary from the ESOP documents.  The court notes that testimony about "what an ESOP committee would have done if . . ." is problematic, but also applies a good dose of common sense to this fact situation.  Given the nature of Patterson's bad acts of bank fraud and its inevitable negative impact on the Bank, Bancshares, and Bancshares stock, the court must acknowledge that no prudent and reasonable ESOP Committee would choose to purchase additional Bancshares stock upon learning about those bad acts.

the misconduct itself.  This argument misses the point.  The breach in question involved Patterson's failure to disclose his wrongful acts which breach resulted in the purchase of Bancshares stock.  Because the ESOP Committee would not have bought the stock but for the breach, the point is that the stock lost value, whether the loss resulted from the misconduct or the disclosure of the misconduct.  Therefore, Patterson has failed to disprove the causal connection.

Applying the Second and Sixth Circuit standards is a more difficult process, because Plaintiffs must prove a causal connection between the breach and the loss.  As noted, Plaintiffs have submitted undisputed evidence  that the shares purchased in 1998  subsequently lost value. Although a dispute does exist regarding *how much* of that loss emanated from Patterson's illegal acts and the negative publicity surrounding those acts, even Patterson's expert acknowledges that the acts and the negative publicity surrounding them had a negative impact on the ESOP stock value, including the stock purchased in 1998.  The court need not quantify the exact amount of the loss to find that Plaintiffs have established their prima facie case; it need only establish that Patterson's breach caused a loss of some kind.  Under either test, therefore, Plaintiffs have established their *prima facie* case of breach of fiduciary duty, including causation.

Accordingly, Patterson has identified no genuine issue of material fact to prevent Plaintiffs' establishment of their breach of fiduciary duty claim.  Plaintiffs have proven that Patterson breached his fiduciary duty to disclose his wrongful acts to the ESOP Committee while he was acting within the scope of his capacity as a fiduciary and that his breach damaged the ESOP.  This court will GRANT Plaintiffs' Motion for Summary Judgment for breach of fiduciary duty on this failure to disclose theory but will DENY Plaintiffs' motion as to all other theories of breach of fiduciary duty.

B.  PLAINTIFF'S MOTION ON COUNT IV: PATTERSON'S PERSONAL LIABILITY
UNDER THE PLAN

Plaintiffs bring this suit alleging in Counts I through III that Patterson breached his

fiduciary duty to the ESOP and requesting in Count IV a declaratory judgment finding as

follows:

> (1) the Community ESOP has a right of set-off against the funds or assets demanded
> by Patterson in the amount of the damages sustained by the Community ESOP as a
> proximate result of Patterson's misconduct and breaches of duty; (2) that Patterson
> is not entitled to a payment or distribution of funds or other assets held by North
> Star as Trustee of the Community ESOP; and (3) that the ESOP Committee's
> decision and direction that Patterson is not entitled to a payment or distribution of
> funds or other assets held by North Star as Trustee of the Community ESOP is
> proper under the terms of the Community ESOP Plan and ERISA.

(Pls' Compl.).  They also rely on ERISA § 409(a), which provides that a fiduciary who fails to

uphold his statutory responsibilities may be held "personally liable to make good to [the] plan

any losses to the plan resulting from such breach, and to restore to such plan any profits of such

fiduciary which have been made through the use of assets of the plan by the fiduciary. . . ."  29

U.S.C. § 1190(a).  Patterson, on the other hand, claims that the ESOP Committee wrongfully

denied him benefits under the ESOP and seeks appropriate damages by counterclaim.

Having found that the Patterson indeed breached his fiduciary duty to the ESOP, the court

must next address what effect, if any, this breach has upon the obligation of the ESOP

Committee to provide benefits to Patterson under the Pension Plan and Benefit Restoration Plan.

Patterson requested that his account balances in these plans be rolled over and paid directly to a

self-directed IRA.  Since the discovery of Patterson's misconduct and his request for benefits, the

ESOP Committee has taken the position that Patterson's beach of fiduciary duty caused loss to

the ESOP and consequently, the ESOP Committee may offset the loss from the benefits

otherwise due.

As support for that position, it identified Section 19 of the ESOP, which provides:

SECTION 19.  NO ASSIGNMENT OF BENEFITS
A Participant's Capital Accumulation may not be anticipated, assigned (either at
law or in equity), alienated or subject to attachment, garnishment, levy, execution
or other legal or equitable process, except in accordance with a qualified domestic
relations order (as defined in Section 414(p) of the Code).  To the extent provided
under such a qualified domestic relations order, a former spouse of a Participant
shall be treated as the spouse or surviving spouse for all purposes under the Plan.
*Notwithstanding any provisions of this Section to the contrary, an offset of a
Participant's accrued benefit against an amount the participant is ordered or
required to pay the Plan with respect to a judgment, order or decree issued, or a
settlement entered into, on or after August 5, 1997, shall be permitted in
accordance with Code Section 401(a)(13)(C) and (D).*

(Def.'s Mem. in Support of Mot. for Summ. J. ¶ 22). (emphasis added).  Plaintiffs filed the

instant suit to procure "a judgment, order or decree" establishing Patterson's liability to the

ESOP.  ERISA and the Internal Revenue Code expressly authorize an offset against ESOP

benefits when a civil judgment so provides.  ERISA § 206(d)(4), 29 U.S.C. § 1056(d)(4); 26

U.S.C. § 401(a)(13)( C).  Pursuant to ERISA § 502(a)(2) & (3), 29 U.S.C. § 1132(a)(2) & (3),

and ERISA § 409(a), 29 U.S.C. § 1109(a), this court can order equitable or any other appropriate

relief to prevent or remedy losses to the ESOP caused by Patterson's breach of a fiduciary duty.

Having found that Patterson breached his fiduciary duty to the ESOP and caused loss to

the ESOP, the court further finds that the ESOP Committee had a right under the ESOP

provisions to seek a court judgment establishing Patterson's liability to the ESOP and to suspend

payment of benefits until that litigation was resolved.  The court has examined the ESOP and

ERISA provisions and has determined that they allow the benefits otherwise due Patterson under

34

the ESOP provisions to be offset against the amount of damages that Patterson owes the ESOP. Such an offset "best implements Congress's purpose to guarantee pension beneficiaries the broadest protection possible against fiduciaries who breach their fiduciary duties to a pension fund and thereby cause it losses." *Coar v. Kazimir*, 990 F.2d 1413, 1422 (3rd Cir. 1993). The amount of those damages will be determined in later proceedings.

Accordingly, the court will GRANT in part Plaintiffs' Motion for Partial Summary Judgment as to Count IV to the extent that it requests a finding that (a) the ESOP Committee has a right of set-off against the benefits to which Patterson would otherwise be entitled; and (b) the ESOP Committee correctly delayed distributing benefits to Patterson until the right of set-off was determined. Because the amount of damages and the consequential right of set-off has not yet been determined, the court will DENY at this juncture Plaintiffs' Motion for Partial Summary Judgment as to Count IV to the extent that it requests a finding that Patterson is not entitled to a payment or distribution of funds or other assets held by North Star as Trustee of the Community ESOP.

### C.  DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Patterson has filed a Motion for Summary Judgment regarding all claims asserted against him in Plaintiffs' complaint and all claims asserted against Plaintiffs in his counterclaim.

### **Claims Asserted in Plaintiffs' Complaint**

The court DENIES Patterson's motion with respect to the claim of breach of fiduciary duty to disclose asserted in Count I, II, and III of Plaintiffs' complaint for the reasons that it has granted Plaintiffs' motion on that claim. The court DENIES Patterson's motion on the remaining claims asserted in those counts because genuine issues of material facts remain.

With respect to Count IV of Plaintiffs' complaint, Plaintiffs have established that Patterson breached his fiduciary duty to disclose and have established the right of offset, but the parties have not yet established the amount of the loss against which his claim for benefits would be offset.  Accordingly, Patterson has not established that no genuine issue of material facts exists and the court will DENY his motion as to Count IV.

### Claims Asserted in Patterson's Counterclaim

As noted previously, the parties have not yet established the amount of the loss against which Patterson's claim for benefits would be offset.  Accordingly, Patterson has not established that no genuine issue of material facts exists and the court will DENY his motion on the counterclaim.

### V.  CONCLUSION

For the reasons stated above, the court will

•    DENY Patterson's Motion for Summary Judgment;

•    GRANT Plaintiffs' Motion for Partial Summary Judgment to the extent that Counts I, II, and III claim that Patterson breached his fiduciary duty under ERISA to disclose his wrongful acts to the ESOP Committee prior to the 1998 purchase of Bancshares stock;

•    DENY Plaintiffs' Motion for Partial Summary Judgment to the extent that Counts I, II, and III claim that Patterson breached any other fiduciary duty under ERISA;

•    GRANT in part Plaintiff's Motion for Partial Summary Judgment as to Count IV to the extent that it requests a finding that (a) the ESOP Committee has a right of set-off against the benefits to which Defendant would otherwise be entitled; and

36

(b) the ESOP Committee correctly delayed distributing benefits to Patterson until the right of set-off was determined;

• DENY at this juncture Plaintiff's Motion for Partial Summary Judgment as to Count IV to the extent that it requests a finding that Patterson is not entitled to a payment or distribution of funds or other assets held by North Star as Trustee of the Community ESOP.

The court will determine the amount of damages to be awarded as a result of Patterson's breach of fiduciary duty in later proceedings.

The court will enter a separate order consistent with this opinion.

Dated this 31st day of March, 2008.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE